FILED
SUPERIOR COURT
GUAM

2014 SEP -8 PM 1: 50

CLERK OF COURT

BY:

# IN THE SUPERIOR COURT
## OF GUAM

| | |
|---|---|
| CHAMORRO EQUITIES, INC., | Civil Case no. CV0408-13 |
| Plaintiff, | |
| vs. | |
| VIVIAN McCURDY, LISA ULLOA, and FEDERICK ULLOA, | **DECISION AND ORDER** |
| Defendants. | |
| VIVIAN McCURDY, WALTER D. ULLOA, JUDITH E. OLIVER, and LISA ULLOA | |
| Counterclaim Plaintiffs, | |
| vs. | |
| CHAMORRO EQUITIES, INC., ROBERT V. ULLOA, GERALD D. HARTWICK, KENNETH E. THOMPSON, PRISCILLA U. HARTWICK, SHEILA M. MANALOTO, and DOES 2-10, | |
| Counterclaim Defendants, | |
| MEC, LLC., | |
| Intervenor. | |

## INTRODUCTION

Pursuant to Rule 7.1 of the Local Rules of the Superior Court of Guam, Intervenor's motion for injunctive relief was taken under advisement by the Honorable Judge Michael J. Bordallo on August 5, 2014. The Intervenor, MEC LLC. (hereafter MEC), was represented by

attorney Joseph C. Razzano. Plaintiff was represented by attorney Mitchell F. Thompson. Counterclaim Defendants Robert V. Ulloa, Gerald D. Hartwick, Kenneth E. Thompson, Priscilla U. Hartwick, and Sheila M. Manaloto, (hereafter Counterclaim Defendants) were represented by attorney Bill R. Mann. After considering the matters presented, the Court now issues the following decision and order granting in part Intervenor's motion.

## BACKGROUND

This case arises out of a March 29, 2013 complaint for the cancellation and collection of several improper loan agreements made between Plaintiff and Defendants. Compl. at 2-5. The complaint seeks to void the loans and recover the amounts of the loans. *Id.* at 5.

**I.**

On June 16, 2014, MEC filed a motion requesting the following injunctive relief:

1) Stopping all cash distributions or dividends until actual ownership of the shares in Chamorro Equities Inc. is determined;

2) The voiding of any elections held by shareholders of Chamorro Equities Inc. which did not include MEC; and

3) Any other necessary equitable relief.

Mot. at 1. In support of these requests MEC argues and asserts that Plaintiff has refused to acknowledge MEC's rights as a shareholder and as a result, it is suffering irreparable injury. *Id.* MEC asserts its rights arise out of: 1) a September 7, 2012 notice to Plaintiff inquiring whether the shares were already pledged or otherwise encumbered; 2) Plaintiff's failure to reference any restriction on the certificated shares of stock, and 3) a September 26, 2012, $500,000.00 promissory note between it and shareholder Mrs. Vivian McCurdy for which Mrs. McCurdy's shares in Chamorro Equities' Inc. were pledged as security. *Id.* at 2-3, 7. It is asserted that Mrs. McCurdy failed to repay the note and pursuant to its terms the shares have been surrendered and duly noticed as foreclosed. *Id.* at 3. Plaintiff however refuses to transfer the shares, indicates

that MEC's acquisition was invalid, and asserts a right of first refusal against MEC; Plaintiff converting and reassigning MEC's dividend and corporate participation rights in the shares to itself and other shareholders. *Id.* at 3-5.

Citing a 2013 Guam Supreme Court case, MEC argues that a shareholder's right to participate in corporate governance is a non-monetary right subject to injunctive relief. *Id.* at 6. MEC explains that Plaintiff is inequitably insisting that Mrs. McCurdy is first required to offer to sell or notify it of her intention to sell the stock she used to secure her $500,000.00 note with MEC, or that Plaintiff be allowed to purchase the stock from MEC. *Id.* MEC argues that Plaintiff's position is contrary to Guam law and its own by-laws, the restriction not having been conspicuously noted on the stock certificate. *Id.* at 7, citing By-Law § 7.05.03(iii) and 13 GCA § 8204. Because MEC was not notified of, or in anyway aware of, the restriction or a party to the contractual relationship from which the restriction arises, it argues that it cannot nor should it be so bound. *Id.* at 7, 10-14.

Lastly MEC emphasizes that prior to executing the promissory note with Mrs. McCurdy it notified Plaintiff of the transaction. *Id.* at 14-15. Upon receiving notice on multiple occasions, Plaintiff failed to exercise its option to purchase the stock with 30 days of Mrs. McCurdy offering it as a security. *Id.* Accordingly MEC argues that it is precluded from invoking the restriction by its very terms. *Id.*

Plaintiff filled its opposition to MEC's motion on July 14, 2014. Opp. at 1. First, referring to MEC's pleading, Plaintiff argues and asserts that MEC has failed to adequately plead the relief sought in its motion and should therefore be denied. Id. at 3-4. Second, although not specifically addressing MEC's corporate participation argument, Plaintiff argues that MEC has failed to adequately assert any fact which might a support irreparable injury;

one's failing to pay dividends being a repairable, monetary harm. *Id.* at 5. Citing a debtor's rights under 13 GCA §§ 9504 and 9505(2), Plaintiff also argues that it is unlikely MEC will succeed on the merits, it having failed to produce or assert sufficient evidences of ownership of the shares, adequately acquired after default, and Mrs. McCurdy not having waived her post default rights. *Id.* at 6-7.

Plaintiff therefore reasons that its right of first refusal remains in effect. *Id.* at 7. In further support of that argument Plaintiff contends that MEC's September 2012 notice of an encumbrance was not an event to trigger its right of first refusal. *Id.* It asserts that it first became aware of MEC's claim to Mrs. McCurdy's shares in November of 2013, whereupon it informed MEC it would exercise its right of first refusal to purchase back those shares. *Id.* at 1-2, 8. Plaintiff further asserts that Mrs. McCurdy never offered her shares to it for repurchase nor has MEC provided adequate proof of Mrs. McCurdy's indebtedness. *Id.* at 2, 7-8.

It asserts that it was incorporated in 1987 by seven, equal share holding siblings of the Ulloa family to: 1) own, manage and develop the real property the siblings had inherited from their parents; and 2) provide income to these seven siblings. *Id.* In furtherance of these purposes its articles of incorporation provide that: 1) shares cannot be disposed without first being offered back to the corporation, and 2) that upon notice the corporation may purchase the shares at a price equal to their book value. *Id.* at 1-2. Plaintiff argues and asserts that under these and similar circumstances its right of first refusal remains in effect. *Id.* at 1.

Lastly Plaintiff argues that a showing of actual knowledge of the restriction acts to moot MEC's arguments. Plaintiff questions MEC's knowledge of the transfer restriction, arguing that the declaration of one of its members is insufficient, reliant on hearsay as to the other members and biased. *Id.* at 9. It also asserts its supposition that MEC is evading service and

hiding relevant facts by requesting protective orders. *Id.* 9-10. Plaintiff reasons that it would be nonsensical for MEC to not have read Plaintiff's by-laws and been aware of the restriction prior to making a loan of $500,000.00 to Mrs. McCurdy.

On July 14, 2014, Counterclaim Defendants filed their opposition. In it they assert their joiner to Plaintiff's opposition.

MEC filed its reply on July 23, 2014. Reply at 1. It begins its reply by arguing and asserting that either its status as owner or as a secured creditor entitles it to participate in the corporation and to receive dividends and that under either status its rights have been unjustifiably precluded by Plaintiff. *Id.* at 2, 5-6. It further asserts that Plaintiff's speculation about possible defects in its acquisition of Mrs. McCurdy's shares are devoid of merit and without standing. *Id.* Arising from the shares used to secure the promissory note and citing several cases from foreign US jurisdictions and the UCC, MEC characterizes itself as at a minimum as pledgee, Mrs. McCurdy the pledgor, entitled to any dividends the stock may produce. *Id.* at 6.

MEC argues that the relief sought is sufficiently related to its pleading to survive any substantive challenge. *Id.* at 3. It re-asserts its argument that disallowing it to participate in the corporation constitutes irreparable injury and asserts that Plaintiff is using MEC's rightful dividend monies to fund this lawsuit. *Id.* at 3-4. MEC reasons that freezing dividend payments, otherwise enjoining Plaintiff from showing preference to shareholders, will allow other minority shareholders who fear the current leadership a real voice. *Id.* at 4.

Replying to Plaintiff's arguments about the necessity of its request for a protective order, MEC asserts that Plaintiff has sought information outside the scope of that allowed by Guam Law and 13 GCA § 8403(1). *Id.* at 7. Citing the Plaintiff's articles of incorporation and

the deposition of Plaintiff's President, Ulloa, wherein Ulloa asserted that a pledge of stock triggers the restriction's 30 day right of first refusal, MEC argues that it provided Plaintiff with sufficient notice on September 7, 2012. *Id.* at 8. Lastly MEC emphasizes that it is undisputable that it was not aware of the restriction prior to agreeing to note, it provided adequate notice of its intention to receive through pledge an interest in the shares, and that the shares did not contain any notice of the restriction. *Id.* at 9-10.

## DISCUSSION

Rule 65 of the Guam Rules of Civil Procedure regulates the entry of injunctions. Guam R. Civ. P 65. It provides,

> No restraining order or preliminary injunctions shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

*Id.*

In August of last year the Guam Supreme Court reiterated the standard by which a trial court is to review a motion for preliminary injunction. *Mack v. Davis*, 2013 Guam 13 ¶ 12. It explained,

> A preliminary injunction is a 'drastic remedy,' which serves to maintain the *status quo ante litem*. [B]efore [a preliminary] injunction may issue, the plaintiff must show that he will suffer irreparable injury and that he otherwise lacks an adequate remedy at law. Plaintiffs seeking such remedy have the task of proving they are entitled to such an extraordinary remedy. In Guam, the test for obtaining a preliminary injunction is for a movant to show: "(1) irreparable injury, and (2) the likelihood of succeeding on the merits."

*Id.* (citations omitted). MEC asserts that having duly acquired the shares of Mrs. McCurdy, Plaintiff's refusal to authorize or allow its right to corporate participation is causing it an irreparable injury. Mot. at 2-3, 7. As it was set forth in the papers of the Parties above, critical to MEC's assertion of harm, as well as its likelihood of success, is whether MEC's right to corporate participation was duly acquired. Accordingly the Court must first review whether

MEC has sufficiently shown that it is likely that the shares were duly acquired, the restriction invalid. *Mack*, 2013 Guam 13 ¶ 12.

As was recently persuasively explained by our sister court and as developed by the 9th Circuit, a showing of likelihood does not require an assertion of verifiable facts under the preponderance burden. *Harris v. Acme Universal, Inc.*, NO. CV 12-00008, 2014 WL 3907107 at *5, (D.Guam, 2014)(denying motion to modify preliminary injunction)(citing, *Bernhardt v. Los Angeles County*, 339 F.3d 920, 926–27 (9th Cir. 2003)). Specifically the court explained that movant's first burden,

> requires the plaintiff to demonstrate either likelihood of success on the merits, or serious questions going to the merits. The Ninth Circuit has described serious questions in conflicting ways. For example, it has stated that serious questions are those 'which cannot be resolved one way or the other at the hearing on the injunction;' they need not promise a certainty of success, nor even present a probability of success.

*Id.* At most the 9th Circuit has explained the moving party's burden as, "a 'fair chance' of success on the merits." *Id.*, citing, *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984). A review of other U.S. Federal Circuits reveals that several other jurisdictions apply a similar standard. *Corporate Technologies, Inc. v. Harnett*, 731 F.3d 6, 37 (1st Cir. 2013)(A court is required only to make an estimation of likelihood of success and need not predict the eventual outcome on the merits); *Jones v. Caruso*, 569 F.3d 258, 277 (6th Cir.2009)(Courts, however, may grant a preliminary injunction . . . where he at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued). Further salient to this case is the 9th Circuit's holding that while assertions supporting an injunction should be verified, a trial court "may rely on otherwise inadmissible evidence, including hearsay evidence." *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

Section 8204 of Title 13 of the Guam Code provides, "unless noted conspicuously on the security a restriction on transfer imposed by the issuer even though otherwise lawful is ineffective except against a person with actual knowledge of it." 13 GCA § 8204 (2013). MEC asserts through affidavit that upon entering into the loan agreement with Mrs. McCurdy it was unaware of the Plaintiff's right of first refusal provision. Mot. at 7, 10, and 13-14. In support of this assertion MEC has attached a Declaration of Melissa V. Torres wherein she swears personal knowledge of the fact that MEC's members and officers had no knowledge of any restrictions on the sale of the shares. Decl. of Joseph Razanno #2 at 2. It further provides a copy of the shares which fail to reference any restriction on their face. Decl. of Joseph Razanno at Ex. 6. Under the above standards Defendant has met its burden, raising serious questions that: 1) it is likely the shares were duly acquired and 2) that it is likely the restriction is non-binding. *Mack*, 2013 Guam 13 ¶ 12.

From the Parties' papers, it is undisputed that Plaintiff refuses to allow MEC to exercise its likely corporate rights of participation. In 2013 the Supreme Court found that the dilution or removal of corporate rights may support a finding of irreparable injury. *Id.* at ¶ 23. Having analyzed and identified sufficient facts to support the findings of likelihood, acquisition and irreparable harm, the entry of a preliminary injunction precluding it *pendente lite* is equitably prudent.

//

//

## CONCLUSION

Based upon the foregoing the Court grants in part MEC's request. Pending the disposition of this case and upon MEC's providing the Court a $50,000.00 bond, Plaintiff is hereby enjoined from further precluding MEC's corporate participation in Chamorro Equities Inc. Furthermore, any dividends or cash distributions attributable to the shares in question shall be, upon 45 days from the entry of this order, deposited with the Court to be held in trust pending a final determination of the ownership of the shares.

SO ORDERED, this _____ day of _____ *Sept.* _____ 2014.

_____
HONORABLE MICHAEL J. BORDALLO
Judge, Superior Court of Guam

**CIVILLE & TANG, PLLC**
330 HERNAN CORTEZ AVENUE, SUITE 200
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868
FACSIMILE:   (671) 477-2511

*Attorneys for Intervenor MEC, LLC*

FILED
SUPERIOR COURT
OF GUAM

2014 JUN 16 PM 4: 36

CLERK OF COURT
BY:_____

## IN THE SUPERIOR COURT OF GUAM
## HAGATNA, GUAM

| | |
|---|---|
| CHAMORRO EQUITIES, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>VIVIAN McCURDY, LISA ULLOA and FREDERICK ULLOA<br><br>Defendants.<br>------------------------------------------------<br>VIVIAN MCCURDY, WALTER D. ULLOA, JUDITH E. OLIVER AND LISA ULLOA,<br><br>Counterclaim Plaintiffs,<br><br>vs.<br><br>CHAMORRO EQUITIES, INC., ROBERT V. ULLOA, GERALD D. HARTWICK, KENNETH E. THOMPSON, PRISCILLA U. HARTWICK, SHEILA M. MANALOTO and DOES 2-10<br><br>Counterclaim Defendants.<br>------------------------------------------------<br>MEC, LLC<br><br>Intervenor | Civil Case No. CV0408-13<br><br>**MEC'S MOTION FOR, AND MEMORANDUM IN SUPPORT OF, INJUNCTIVE RELIEF** |

ORIGINAL

-i-

Taxation will grant retroactive business licenses and remedy his claim for damages in this matter. Plaintiff is **HEREBY ORDERED** to file with the Court a report of his findings before the next hearing.

A Status Hearing in this matter is scheduled for (Date), 2014 at (Time).

**SO ORDERED this _____ day of August, 2014.**

**HONORABLE MARIA T. CENZON**
**Judge, Superior Court of Guam**

# TABLE OF CONTENTS

MOTION.................................................................................................................1

FACTS..................................................................................................................1

MEC'S ACQUISITION OF MRS. MCCURDY'S SHARES .........................................2

THE DISPUTE BETWEEN MRS. MCCURDY AND CHAMORRO EQUITIES.................3

CHAMORRO EQUITIES ACTIONS AGAINST MEC ................................................4

STANDARD FOR PERMANENT INJUNCTIOn.........................................................5

OVERVIEW ...........................................................................................................5

I.   The denial of MEC's participation in Chamorro Equities is an irreparable injury .......6

II.  MEC will succeed on the merits as Chamorro Equities' actions violate the law.........7

    A.  The Guam Commercial Code treats MEC as a purchaser, and Chamorro Equities as an Issuer, and therefore Chamorro Equities has few, if any, defenses as to MEC...........................................................................7

        1.  The Uniform Commercial Code governs Chamorro Equities' actions........7

        2.  MEC is a Purchaser of the Shares...................................................8

        3.  Chamorro Equities is an Issuer .......................................................8

    B.  Chamorro Equities violated the law by failing to reference the Restriction on the face of its shares and therefore cannot enforce the Restriction..............9

        1.  MEC is not bound by the Restriction, as it was not party to the contractual relationship that gave rise to the Restriction...........................10

    C.  Because Chamorro Equities had notice of the transaction and ignored the notice, it lost any right of first refusal it may have had ...........................14

CONCLUSION........................................................................................................15

# JURY INSTRUCTIONS

## I N D E X

### JURY INSTRUCTION NUMBER

### I. PRELIMINARY OPENING INSTRUCTIONS

JUROR ATTENTIVENESS AND DUTIES.................................................................. 1A
EVIDENCE ............... ......................................................................................... 1B
CREDIBILITY ...................................................................................................... 1C
THE PEOPLE AS A PARTY BURDEN OF PROOF......................................... 1D
STATEMENTS BY THE DEFENDANT ........................................................... 1E
USE OF FORCE BY A PARENT....................................................................... 1F

### II. SPECIFIC DEFINITIONS

"CHILD ABUSE" DEFINED ............................................................................... 2A
"FAMILY VIOLENCE" DEFINED ..................................................................... 2B
"ASSAULT" DEFINED ....................................................................................... 2C
"RECKLESSLY" DEFINED ................................................................................ 2D
"BODILY INJURY" DEFINED ........................................................................... 2E
"FAMILY MEMBER" DEFINED ....................................................................... 2F
"SELF DEFENSE" DEFINED ............................................................................. 2G

### III. ELEMENTS OF OFFENSE

ESSENTIAL ELEMENTS OF CHILD ABUSE .................................................. 3A
ESSENTIAL ELEMENTS OF FAMILY VIOLENCE........................................ 3B
ESSENTIAL ELEMENTS OF ASSAULT ......................................................... 3C

### VI. CLOSING INSTRUCTIONS

VERDICT -- UNANIMOUS -- DUTY TO DELIBERATE ................................... 4A
GENERAL VERDICTS AS TO EACH OFFENSE CHARGED ......................... 4B
ADMONITION AGAINST DISCLOSURE OF JURY BALLOTING ................. 4C
ELECTION OF FOREPERSON .......................................................................... 4D

# TABLE OF AUTHORITIES

Allen v. Biltmore Tissue Corp.,
2 N.Y.2d 534 (N.Y. 1957) ........................................................................................10

Earth Island Inst. v. Carlton,
626 F.3d 462 (9th Cir. 2010) .....................................................................................5

Edina State Bank v. Mr. Steak, Inc.,
487 F.2d 640 (10th Cir. 1973) ......................................................................11, 12, 13

Koch Indus., Inc. v. Sun Co., Inc.,
918 F.2d 1203 (5th Cir. 1990) ............................................................................14, 15

Mack v. Davis,
2013 Guam 13.....................................................................................................5, 6

Sampson v. Murray,
415 U.S. 61 (1974)....................................................................................................1

Suchodolski Assocs., Inc. v. Cardell Fin. Corp.,
2003 U.S. Dist. LEXIS 24933, 2003 WL 22909149 (S.D.N.Y. Dec. 10, 2003) ...............6

## STATUTORY AUTHORITY

13 G.C.A. § 1201(31) ...............................................................................................8

13 G.C.A § 8101 .......................................................................................................8

13 G.C.A. § 8102 ......................................................................................................8

13 G.C.A. § 8102(6) ..................................................................................................8

13 G.C.A. § 8102(1)(a)...............................................................................................8

13 G.C.A. § 8201 ..................................................................................................8, 15

13 G.C.A. § 8204 ................................................................................9, 11, 12, 13, 14

13 G.C.A. § 8301(1) ..................................................................................................8

13 G.C.A. § 8301(3) ..................................................................................................8

13 G.C.A. § 8401 ......................................................................................................9

13 G.C.A. § 8401(1)(a)...............................................................................................9

13 G.C.A. § 8401(1)(b)...............................................................................................9

13 G.C.A. § 8401(2) ................................................................................................14

# I. PRELIMINARY OPENING INSTRUCTIONS

## JURY INSTRUCTION NO. 1A

## JUROR ATTENTIVENESS AND DUTIES

Ladies and gentlemen, it is now your job to decide the facts of this case and apply them to the law. It is not your job to decide whether a law is good or whether it should be followed. Your only duty is to decide the truth. To do this you must weigh the value of evidence, determining the credibility of the witness, and resolve any conflicts as there may be in either.

To decide the facts you must rely upon your memory. Anything the lawyers or I have said is not evidence and you should not consider it.

The question of possible punishment of the defendant is of no concern to the jury and should not, in any sense, enter into or influence your deliberations. The duty of imposing sentence rests exclusively upon the court. You must decide all questions of fact in this case from the evidence received in this trial and not from any other source. You must not make any independent investigation of the facts or the law or consider or discuss facts as to which there is no evidence. This means, for example, that you must not on your own visit the scene, conduct experiments, or consult reference works or persons for additional information.

## RULES OF CIVIL PROCEDURE

Guam. R. Civ. P. 65(a)................................................................................................1

# JURY INSTRUCTION NO. 1B

## EVIDENCE

Evidence consists of the answers given by witnesses and the exhibits that were received in evidence. There are two types of evidence which you may use. One type of evidence is called direct evidence. An example of this is when a witness testifies to what he said, heard or observed. What a witness sees, feels, touches or hears -- that is called direct evidence.

Circumstantial evidence is the second type of evidence. It is evidence that tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. As you were sitting here, someone walked in with an umbrella which was dripping wet. Somebody else then walked in with a raincoat which also was dripping wet.

Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But, on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from an established fact that existence or the nonexistence of some other fact. Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct and circumstantial evidence.

## MOTION

Intervenor/Defendant MEC, LLC. ("MEC"), by and through its undersigned counsel, asks the court to grant a motion for injunctive relief against Counterclaim Defendant Chamorro Equities, Inc. ("Chamorro Equities"). MEC suffered and will continue to suffer immediate and irreparable injury if Chamorro Equities is not immediately restrained from preferring some shareholders over others and interfering with MEC's right to participate as a shareholder of Chamorro Equities. Guam. R. Civ. P. 65(a); see also Sampson v. Murray, 415 U.S. 61, 88-89 & n.59, 94 S. Ct. 937, 951-52 & n.59 (1974). MEC, out of necessity, requires an injunction: (1) to stop all cash distributions or dividends until this Court has determined actual ownership of the shares in Chamorro Equities, Inc.; (2) declare any elections held by shareholders of Chamorro Equities void that did not include MEC as a participant, specifically the annual shareholders meeting and Board of Directors meeting held on June 11, 2014; and (3) any other relief the Court finds equitable in its discretion.

## FACTS

MEC is an intervenor in this matter because of Chamorro Equities' refusal to acknowledge MEC's status as the holder of certificated shares of Chamorro Equities stock, and has denied MEC the rights it has as a shareholder to vote, receive dividends, and otherwise enjoy the privileges of its share ownership. Unfortunately, MEC is involved in this case because of the collateral damage caused by a dispute between Chamorro Equities and a previous shareholder, Vivian McCurdy ("Mrs. McCurdy"). MEC has no interest in the dispute between Chamorro Equities and Mrs. McCurdy except for the fact that Chamorro Equities uses its dispute with Mrs. McCurdy as the reason for its mistreatment of MEC. MEC only seeks to avoid the immediate and irreparable injury it is currently suffering by being denied its rights as a shareholder of Chamorro Equities securities.

JURY INSTRUCTION NO. 1C

## CREDIBILITY OF A WITNESS

In deciding what the facts are, you must decide what testimony to believe and what testimony not to believe. In making that decision, you may take into account a number of factors, including the following:

1.     Was the witness able to see, or hear, or know the things about which that witness testified?

2.     How well was the witness able to recall and describe those things?

3.     What was the witness' manner while testifying?

4.     Did the witness have an interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case?

5.     How reasonable was the witness' testimony considered in light of all the evidence in the case?

6.     Was the witness' testimony contradicted or supported by what that witness had said or done at another time, or by the testimony of other witnesses, or by other evidence?

In deciding whether or not to believe a witness, keep in mind that people sometimes forget things. You need to consider, therefore, whether a contradiction is an innocent lapse of memory or an intentional falsehood. If you decide that a witness deliberately lied about something significant in this case, you should consider not believing anything that witness says. Or, if you think the witness lied about some things, but told the truth about others, you may simply accept the part that you think is true and ignore the rest.

## MEC's Acquisition of Mrs. McCurdy's Shares

Sometime in the late summer of 2012, Vivian McCurdy approached MEC seeking a substantial loan. At arms length, MEC and Mrs. McCurdy negotiated a five hundred thousand dollar ($500,000) loan. MEC, in exchange for the loan, demanded security and Mrs. McCurdy offered her shares in Chamorro Equities (the "Shares"). A true and correct copy of the Shares certificates are attached to the declaration of Joseph C. Razzano ("Razzano Dec.") filed contemporaneously herewith and incorporated by reference as **Exhibit "A."**[1]

On September 7, 2012,[2] pursuant to this offer of collateral, MEC sent Chamorro Equities a letter, attached to the Razzano Dec., and incorporated by reference as **Exhibit "B,"** inquiring whether or not the shares were pledged or otherwise encumbered. Chamorro Equities responded by sending a letter, attached to the Razzano Dec., and incorporated by reference as **Exhibit "C,"** indicating that the Shares were Mrs. McCurdy's and that they were not pledged as collateral. Importantly, September 7, 2012, is the first time Chamorro Equities became aware of the impending transaction. It was the first time, but not the last time, however, that it would choose to ignore any information regarding the transaction between its shareholder, Mrs. McCurdy, and MEC.

Thereafter, on September 26, 2012, Mrs. McCurdy, and her husband, executed a Promissory Note (the "Note"), attached to the Razzano Dec., and incorporated by reference as **Exhibit "D,"** in favor of MEC. Concurrent with that transaction, Mrs. McCurdy also executed the following: (1) an Assignment of Stock Certificates (the "Assignment"), attached to the

---

[1] All Exhibits referenced in this motion are attached to the Razzano Dec., and are incorporated by reference herein.

[2] On September 7, 2012, Vivian McCurdy and Richard McCurdy were directors of Chamorro Equities. Thus, there should not be a dispute that Chamorro Equities knew about the contemplated transaction. All doubt is erased, however, due to Secretary Judith Oliver's letter, sent pursuant to Director McCurdy's request, of September 26, 2012, the date of the transaction, confirming the status of Mrs. McCurdy's shares. See Letter from Chamorro Equities attached to the Razzano Dec. and incorporated by reference as **Exhibit "R."**

Inconsistencies or discrepancies in the testimony of a witness, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; innocent mis-recollection and/or failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail; and whether the discrepancy results from innocent error or intentional falsehood. The weight of the evidence presented by each side does not necessarily depend on the number of witnesses testifying on one side or the other. You must consider all the evidence in the case, and you may decide that all testimony of a smaller number of witnesses on one side has greater weight than that of a larger number on the other.

## JURY INSTRUCTION NO. 1D

---

## THE PEOPLE AS A PARTY BURDEN OF PROOF

The fact that the prosecution is brought in the name of the People of Guam entitles them to no greater consideration than that accorded to any other party. All parties, whether the People or individuals, stand as equals in the court.

The law presumes a defendant to be innocent of a crime. A defendant, although accused, begins trial with a "clean slate," with no evidence against him. The law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the accused. The presumption of innocence alone is sufficient to acquit a defendant, unless after a careful and impartial consideration of all the evidence in the case, the jurors are satisfied beyond a reasonable doubt of the defendant's guilt.

Razzano Dec., and incorporated by reference as **Exhibit "E:"** (2) a Stock Pledge Agreement (the "Pledge") attached to the Razzano Dec., and incorporated by reference as **Exhibit "F;"** and (4) a grant of Stock Power (the "Power") attached to the Razzano Dec., and incorporated by reference as **Exhibit "G"** (all documents collectively referred to as the "Documents"). These Documents constituted a purchase of the Shares should Mrs. McCurdy be unable to repay the loan.

Under the terms of the Note, Mrs. McCurdy had twelve (12) months to repay the debt. Unfortunately, she failed to repay the loan, and on October 23, 2013, MEC sent a default notice (the "Notice"), attached to the Razzano Dec., and incorporated by reference as **Exhibit "H,"** to Mr. and Mrs. McCurdy. On November 11, 2013, MEC sent Chamorro Equities notice of the foreclosure and requested that the Shares be registered in MEC's name (the "Registration Request"). The Registration Request is attached to the Razzano Dec., and incorporated by reference as **Exhibit "I."** But, instead of registering the transfer of the Shares, or lodging an objection as allowed and required under Guam law, Chamorro Equities took the untenable position that the transfer of Vivian McCurdy's shares happened, but that the transfer was not valid, and that it would like to exercise its right of "first refusal" against MEC. See December 9, 2013 letter from Mitchell F. Thompson[3] attached to the Razzano Dec., and incorporated by reference as **Exhibit "J."**

**THE DISPUTE BETWEEN MRS. MCCURDY AND CHAMORRO EQUITIES.**

As the Court knows, Chamorro Equities is suing Mrs. McCurdy for, among other reasons, repayment of a loan it gave to Mrs. McCurdy, and others, under previous management. See Partial Motion for Summary Judgment, filed on April 9, 2014. While Chamorro Equities brought the instant action to recover damages associated with the loan and for allegedly

---

[3] As the Court is aware, Mr. Thompson became Chamorro Equities' lawyer because of Berman O'Connor & Mann's conflict in this matter. See Decision and Order, filed November 26, 2013 at p. 3, lns. 7-15.

JURY INSTRUCTION NO. 1F

---

## USE OF FORCE BY A PARENT

A parent responsible for the care and supervision of a minor less than eighteen years of age, may use necessary force upon the minor for the purpose of safeguarding nor promoting his welfare, including prevention and punishment of his misconduct.  The force used for this purpose must not be intended to cause or know to create a substantial risk of causing extreme pain or gross degradation.

## II. SPECIFIC DEFINITIONS

### JURY INSTRUCTION NO. 2A

---

### "CHILD ABUSE" DEFINED

A person is guilty of child abuse when having a child in his care or custody or under his control, he unreasonably causes or permits the physical or, emotional health of that child to be endangered.

Child abuse is a felony of the third degree when it is committed under circumstances likely to result in death or serious bodily injury. Otherwise, it is a misdemeanor.

### JURY INSTRUCTION NO. 2B

---

### "ASSAULT" DEFINED

A person is guilty of assault if he recklessly causes or attempts to cause bodily injury to another.

breaching various duties to Chamorro Equities, it has, in addition to seeking legal remedies, also exercised "self-help" against Mrs. McCurdy and, inadvertently or not, MEC. The "self-help" takes the form of conversion of MEC's rights in the Shares and assignment of the dividend interest in Chamorro Equities.

## CHAMORRO EQUITIES ACTIONS AGAINST MEC.

Chamorro Equities, at its convenience, refuses to recognize MEC as a shareholder.[4] It has notified MEC that it wishes to purchase MEC's stock, but refuses to recognize any other aspect of MEC's ownership, including dividend payments and voting rights. For example, Chamorro Equities admits that it "pays monthly distributions to shareholders of record," but that some of those distributions are "currently set-off against amounts owed by the shareholder to [Chamorro Equities]." **Exhibit "K,"** to Razzano Dec., p. 3, Response to Admission No. 12. It is clear that Chamorro Equities wants to punish Mrs. McCurdy, but that "punishment" is actually being directed at MEC because MEC acquired its shares from Mrs. McCurdy. Even assuming, *arguendo,* that Mrs. McCurdy deserves to be punished; it is illegal, and inappropriate, for Chamorro Equities to use dividend payments as a method of punishment if those payments belong, or are at least assigned, to another party. Additionally, Chamorro Equities refuses to recognize MEC's right to vote, see, June 10, 2014 letter from Bill R. Mann, attached to the Razzano Dec., and incorporated by reference as **Exhibit "L,"** despite the fact that MEC is entitled to vote. **Exhibit "F,"** sections 5 & 7(c).

---

[4] Chamorro Equities' position vis-à-vis MEC's ownership of its stock can be mistaken for bad faith as it is rests upon mutually exclusive theories. Chamorro Equities treats MEC as a holder when it wants to acquire its shares, and as a stranger when it is paying dividends—either MEC is a stockholder or it is not. As an example Chamorro Equities seeks to exercise its "right of first refusal" against MEC. **Exhibit "J."** In other words, Chamorro Equities seeks to acquire the Shares from MEC—the current holder. At the same time, Chamorro Equities refuses to acknowledge that MEC owns the Shares as it refuses to make dividend payments to MEC. Rather, Chamorro Equities prefers to make payments to Vivian McCurdy but offset those payments due to the loan dispute. In short, Chamorro Equities prefers to take the money for itself, without regards to its rightful owner.

JURY INSTRUCTION NO. 2C

## "FAMILY VIOLENCE" DEFINED

A person is guilty of family violence if that person, not acting in self-defense or in the defense of others, recklessly causes or attempts to cause a family member or household member bodily injury.

JURY INSTRUCTION NO. 2D

## "RECKLESSLY" DEFINED

A person acts recklessly, or is reckless, with respect to attendant circumstances or the result of his conduct when he acts in awareness of a substantial risk that the circumstances exist or that his conduct will cause the result and his disregard is unjustifiable and constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation.

JURY INSTRUCTION NO. 2E

## "BODILY INJURY" DEFINED

Bodily Injury means a physical pain, illness, unconsciousness or any impairment of physical condition.

The Shares, and all of the rights tied thereto (dividends, corporate voting, etc.) belong to MEC, but MEC is denied access to these rights. As such, Chamorro Equities seems determined to exercise "self-help" against an innocent bona fide purchaser and holder of the shares, MEC. Currently, Chamorro Equities refuses to acknowledge MEC's status as the holder of Chamorro Equities securities as it refuses to register the Shares in MEC's name. Instead, it continues to pretend that it has a contractual right of first refusal against MEC, an innocent third party with no notice, actual or otherwise, of any first refusal restriction on the Shares. Importantly, MEC is not seeking to sell Chamorro Equities stock, but rather seeking to participate as a shareholder and Chamorro Equities refuses to allow this. The explanation for this conversion of MEC's property is that Mrs. McCurdy: (1) did not offer the Shares to Chamorro Equities first; and (2) that such failure entitles it to take actions that adversely affect MEC.

**STANDARD**

A preliminary injunction is, by any definition, a drastic remedy, and it is the moving party's burden to show that they are entitled to such an extraordinary remedy. Earth Island Inst. v. Carlton, 626 F.3d 462, 469 (9th Cir. 2010). Under Guam law, the test for obtaining a preliminary injunction is for a movant to show: "(1) irreparable injury, and (2) the likelihood of succeeding on the merits." Mack v. Davis, 2013 Guam 13 ¶ 12 (citation omitted).

**OVERVIEW**

Almost two years ago, Vivian McCurdy transferred possession of her shares to MEC, MEC provided value for the possession and Chamorro Equities was on notice that this would happen. **Exhibits "B," "C," and "D" through "G."** Chamorro Equities ignored the notice at the time, and now refuses to acknowledge the transfer of the Shares from Vivian McCurdy to MEC. Importantly, it refuses to recognize MEC's proxy. **Exhibit "L."** Apparently, Chamorro Equities argues that its right of first refusal gives it the ability to convert the Shares that rightfully belong

-5-

JURY INSTRUCTION NO. 2F

## "FAMILY MEMBER" DEFINED

Family or household members include:

i)    Adults or minors who have lived together;

ii)   Adults or minors who are related or formerly related by marriage;

iii)  Adults who are related by blood to the fourth degree of affinity.

JURY INSTRUCTION NO. 2G

## "SELF-DEFENSE" DEFINED

The use of force upon or toward another person is justifiable when the defendant believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

to MEC and ignore MEC's rights. There is no excuse or justification for this illegal behavior. MEC, out of necessity, requires a permanent injunction: (1) to stop all cash distributions or dividends until this Court has determined actual ownership of the shares in Chamorro Equities, Inc.; (2) to declare any elections held by shareholders of Chamorro Equities void that did not include MEC as a participant, specifically the annual shareholders meeting and Board of Directors meeting held on June 11, 2014; and (3) to award any other relief the Court finds equitable in its discretion.

## I.     The denial of MEC's participation in Chamorro Equities is an irreparable injury.

In Guam, as in other jurisdictions, injunctive relief may be used to remedy the denial of a shareholder's right to participate in corporate governance. Mack, 2013 Guam 13 ¶ 23, citing Suchodolski Assocs., Inc. v. Cardell Fin. Corp., No. 03 Civ. 4148, 2003 U.S. Dist. LEXIS 24933, 2003 WL 22909149, at *4 (S.D.N.Y. Dec. 10, 2003). This is because a shareholder's right to corporate control is a nonmonetary right that may support injunctive relief. Mack, 2013 Guam 13 ¶ 19.

Chamorro Equities refuses to allow MEC to participate in corporate governance. **Exhibit "L."** Instead of recognizing the valid Pledge, **Exhibit "F,"** and the valid proxy agreement contained therein, **Exhibit "F,"** sections 5 & 7(c), Chamorro Equities states that it is awaiting Mrs. McCurdy's offer to sell her stock, currently held by MEC. **Exhibit "K"** p. 9, Request No. 44. This refusal to allow MEC to participate in Chamorro Equities, in any manner, particularly participation via voting its shares, amounts to an irreparable injury that can only be addressed through equity. Mack, 2013 Guam 13, ¶ 44.

Chamorro Equities seeks to acquire the Shares from MEC—and therefore acknowledges that MEC currently holds the Shares. But, at the same time, Chamorro Equities refuses to allow MEC any beneficial participation as the holder of the Shares. Chamorro Equities cannot have it

-6-

## III. ELEMENTS OF OFFENSE

## JURY INSTRUCTION NO. 3A

---

### ESSENTIAL ELEMENTS OF CHILD ABUSE

The People must prove beyond a reasonable doubt that the defendant LESTER ANASTACIO,

1.  On or about February 5, 2011,

2.  on Guam,

3.  while having a child, namely K.N.J.C. (DOB: 09/29/1995), in his care and custody,

4.  unreasonably caused or permitted the emotional health of said child to be endangered.

both ways: it cannot insist on having an ability to buy back shares from MEC while refusing to allow MEC's participation as a shareholder. MEC either owns the shares or it does not, and the demand to buy back shares from MEC is an acknowledgment/admission that MEC is a shareholder entitled to participate in the benefits of ownership. Chamorro Equities is a unique company: there is only one. MEC is a shareholder of Chamorro Equities that is completely frozen out of any benefits that flow from ownership of the Shares. Accordingly, Chamorro Equities continues to deny MEC the right to participate in corporate governance and injunctive relief is a reasonable, and necessary, remedy to address this injury.

## II.     MEC will succeed on the merits as Chamorro Equities' actions violate Guam law.

The dispute between MEC and Chamorro Equities is a simple one. Chamorro Equities issued several shares of stock, and its Articles of Incorporation gives it the right to repurchase shares for book value, before any shareholder can sell them openly (the "Restriction"). The Restriction is not stated, or referenced, on the certificated shares of Chamorro Equities stock in general or the Shares in particular. **Exhibit "A."** Guam law, and Chamorro Equities own By-Laws, however, requires that any sales restriction, assuming it does not violate public policy, be noted conspicuously on the certificate to be enforceable against a purchase without actual notice of the restriction. By-Laws of Chamorro Equities, Inc. § 7.05.03(iii), attached to the Razzano Dec., as **Exhibit "Q."** MEC purchased the shares from Mrs. McCurdy without notice, actual or otherwise, of the Restriction. Chamorro Equities, therefore, cannot enforce the Restriction against MEC.

**A.     The Guam Uniform Commercial Code treats MEC as a purchaser, Chamorro Equities as an Issuer and, therefore, Chamorro Equities has few, if any, defenses as to MEC.**

**1.     The Guam Uniform Commercial Code governs Chamorro Equities' actions.**

In 1976, the Guam Legislature adopted Article 8 of the Uniform Commercial Code, 13

-7-

It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. Reasonable doubt is defined as follows: "It is not a mere possible doubt because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the mind of the trier of fact in that condition that he cannot say he feels an abiding conviction to a moral certainty, of the truth of the charge."

The jury will remember that a defendant is never to be convicted on mere suspicion or conjecture. The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant; for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. If the jury, after careful and impartial consideration of all the evidence in the case, has a reasonable doubt that a defendant is guilty of the charge, it must acquit.

If the jury views that the evidence in the case as reasonably permitting either of two conclusions -- one of innocence, the other of guilty -- the jury should adopt the conclusion of innocence.

JURY INSTRUCTION NO. 1E

---

## STATEMENTS BY DEFENDANT

You have heard testimony that the defendant made certain statements. It is for you to decide whether the defendant made the statements, and if so, how much weight to give to them. In making this decision, you should also consider all of the evidence about the statement, including the circumstances under which the statement was made.

G.C.A § 8101 et seq. (2014), (the "Code"), and the Code's purpose is to facilitate the transfer of securities, such as the shares of Chamorro Equities. 13 G.C.A. § 8102(1)(a). The Code does this by establishing a system to guide issuers, like Chamorro Equities, and investors, like MEC. Thus, under Guam law, the Shares are regulated by the Code if they are: (1) of a type that is commonly recognized as a medium of investment in any area in which it is issued; (2) issued in registered form; (3) be one of a class or series; and (4) evidence an interest in property, participation in an enterprise or obligation of the issuer. 13 G.C.A. § 8102.

Clearly, the Shares qualify under this definition. Here, the Shares are certificated shares in a company, which is one of the larger going concerns on the island of Guam. Additionally, the Shares are issued in registered form and are in a class of common shares. Finally, they evidence participation, or an interest, in Chamorro Equities. In other words, the Shares, and the relationship between MEC and Chamorro Equities, are governed by the Code.

**2.      MEC is a Purchaser of the Shares**

The Code also defines a purchaser's right against the issuer of the security. A purchaser under the Code is a person taking by sale, discount, negotiation, mortgage, pledge, lien, issue or re-issue, gift or any other voluntary transaction creating an interest in the property. 13 G.C.A. § 1201(31); see also 13 G.C.A. § 8102(6). Upon delivery, a purchaser of a security acquires the rights in the security that the transferor possessed. 13 G.C.A. § 8301(1). Mrs. McCurdy delivered the Shares to MEC on September 26, 2012, see **Exhibit "E,"** but MEC did not gain full rights as a shareholder until the default. **Exhibit "H;"** see also 13 G.C.A. § 8301(3). Because MEC acquired ownership by pledge, it is regarded as a Purchaser under the Code. 13 G.C.A. § 1201(31)

**3.      Chamorro Equities is an Issuer.**

Chamorro Equities is an Issuer as defined by the Code, 13 G.C.A. § 8201. As such,

-8-

It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. Reasonable doubt is defined as follows: "It is not a mere possible doubt because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the mind of the trier of fact in that condition that he cannot say he feels an abiding conviction to a moral certainty, of the truth of the charge."

The jury will remember that a defendant is never to be convicted on mere suspicion or conjecture. The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant; for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. If the jury, after careful and impartial consideration of all the evidence in the case, has a reasonable doubt that a defendant is guilty of the charge, it must acquit.

If the jury views that the evidence in the case as reasonably permitting either of two conclusions -- one of innocence, the other of guilty -- the jury should adopt the conclusion of innocence.

JURY INSTRUCTION NO. 1E

---

STATEMENTS BY DEFENDANT

You have heard testimony that the defendant made certain statements. It is for you to decide whether the defendant made the statements, and if so, how much weight to give to them. In making this decision, you should also consider all of the evidence about the statement, including the circumstances under which the statement was made.

Chamorro Equities has a duty to register the transfer of the Shares from Mrs. McCurdy to MEC. 13 G.C.A. § 8401. Importantly, before registering the transfer, Chamorro Equities had the right to: (1) make sure the Shares were indorsed by the appropriate person, 13 G.C.A. § 8401(1)(a); and (2) reasonable assurances that the indorsements were genuine, 13 G.C.A. § 8401(1)(b). In fact, Chamorro Equities attempted to satisfy itself that the transfer was legitimate. See November 12, 2013 letter from Bill R. Mann, attached to Razzano Dec., and incorporated by reference as **Exhibit "M."** MEC complied with this request and offered to answer any questions Chamorro Equities had. See November 20, 2013 Letter from Joseph C. Razzano, attached to Razzano Dec., and incorporated by reference as **Exhibit "N."** But, instead of registering the transfer of the Shares, or lodging a permissible objection as identified by the Code, Chamorro Equities took the position that the transfer Vivian McCurdy's shares happened, that the transfer was not valid, and that it would like to exercise its right of "first refusal" against MEC found in its Articles of Incorporation. **Exhibit "J."** Simply put, these positions are untenable because alienation restrictions, such as a first refusal, cannot be hidden in a company's articles or by-laws, they must be conspicuously placed on the shares themselves in order to bind a purchaser who has no actual knowledge of the restriction.

**B.     Chamorro Equities violated the law, and its own By-Laws, by failing to reference a restriction on the face of its shares and therefore cannot enforce such a restriction against MEC.**

Guam law requires that any sales restriction, assuming it does not violate public policy, be noted conspicuously on a stock certificate to be enforceable against a purchaser without actual notice of the restriction. 13 G.C.A. § 8204. This requirement, among other things, serves to give notice and bind an innocent third party purchaser to the contract or agreement between the company and its shareholders contained within the by-laws and articles of incorporation. Here, Chamorro Equities' Articles of Incorporation gives it the right to repurchase shares at book

ESSENTIAL ELEMENTS OF FAMILY VIOLENCE

The People must prove beyond a reasonable doubt that the defendant, LESTER ANASTACIO,

1.     On or about February 5, 2011,

2.     on Guam

3.     recklessly place a family member or household member,

that is G.J.C. (DOB: 10/11/2000)

4.     in fear of bodily injury,

5.     and did not act in self-defense.

value, before any shareholder can sell shares at market value (the "Restriction"). The Restriction, however, is not stated, or referenced, on the certificated shares of Chamorro Equities stock in general or the Shares in particular. **Exhibit "A."** MEC purchased the shares from Mrs. McCurdy without notice, actual or otherwise, of the Restriction. Chamorro Equities, therefore, cannot enforce an unknown, unstated Restriction which was not set forth on any share certificate, against MEC.

**1. MEC is not bound by the Restriction, as it was not party to the contractual relationship that gave rise to the Restriction.**

Chamorro Equities would like to rely on the Restriction contained in the Articles of Incorporation as the mechanism that "allows" it to recognize MEC as a shareholder who has no rights due to Mrs. McCurdy's failure to offer her shares to Chamorro Equities. **Exhibit "K"** pp. 6-7, Request 31 ([Chamorro Equities'] position is that Vivian McCurdy's attempt to assign her shares to MEC violates section 5.1 of [Chamorro Equities'] Articles of Incorporation, and the counterclaim Defendants determined that MEC's request was meritless."); see also **Exhibit "J."** The Restriction can be found in Chamorro Equities' Articles of Incorporation, attached to the Razzano Dec., and incorporated by reference as **Exhibit "O."** But, this entire theory is contrary to law.

To begin with restrictions, like the Restriction contained in Chamorro Equities' Articles of Incorporation, are common but they are usually construed "'in the nature of a contract' between the corporation and its stockholders, and, as such, binding upon them." Allen v. Biltmore Tissue Corp., 2 N.Y.2d 534, 541 (N.Y. 1957) (citations omitted); see also 18 Am. Jur. 2d Corporations §§ 387 et seq. Chamorro Equities admits, however, that it is not aware of any contract executed between it and MEC. **Exhibit "K,"** at p. 1, Request 1. This is because its contract, its agreement and the Restriction contained therein, if any, is between it and Mrs. McCurdy, not MEC.

JURY INSTRUCTION NO. 3C

ESSENTIAL ELEMENTS OF ASSAULT

The People must prove beyond a reasonable doubt that the defendant, LESTER ANASTACIO,

1.   On or about February 5, 2011,

2.   on Guam

3.   recklessly caused

4.   bodily injury

5.   to another, that is, G.J.C. (DOB: 10/11/2000)

6.   and did not act in self-defense.

This fact pattern immediately creates a problem for Chamorro Equities because it wants to exercise the Restriction not against Mrs. McCurdy who already sold the shares, but against MEC the actual owner of the stock. Moreover, the exercise of a right of the Restriction is upon the sale of stock, and MEC isn't trying to sell the Shares to anybody else. Rather, MEC just wishes to participate in the governance of its company, Chamorro Equities. Chamorro Equities position, therefore, cannot be that it wants to exercise the Restriction or "right of first refusal," **Exhibit "J,"** rather, it, apparently, intends to tortiuously unwind the transaction between Mrs. McCurdy and MEC altogether. It intends to do this despite the fact that it has no evidence of collusion or bad faith. **Exhibit "K"** at pp. 2-3, Requests 6-8. The sole way Chamorro Equities seeks to unwind the transaction and strip MEC of its property is by way of the Restriction in its Articles of Incorporation. **Exhibit "K."** at p. 7, Request 31; see also Chamorro Equities, Inc.'s Responses to MEC, LLC's Interrogatory No. 6, attached to the Razzano Dec., and incorporated by reference as **Exhibit "P,"** ("[Chamorro Equities'] Articles of Incorporation are public records, available to the public from the Department of Revenue and Taxation ... Upon information and belief, MEC, and its counsel, as part of their due diligence before entering into the transaction with Vivian McCurdy, would have obtained, and reviewed, a copy of [Chamorro Equities'] Articles as part of that process.")

But, Chamorro Equities cannot use the Articles of Incorporation as a way to bind innocent third parties who did not originally agree to the Articles of Incorporation. This is because **the Code imposes a strict requirement on Chamorro Equities, as issuer, to provide notice of any transfer restrictions, and, at the same time, does not require any independent inquiry by the holder of the certificate**; in this case, MEC. 13 G.C.A. § 8204. Courts examining this issue have reached this exact conclusion on substantially similar facts. See Edina State Bank v. Mr. Steak, Inc., 487 F.2d 640, 642 (10th Cir. 1973), cert. denied 419 U.S. 883, 42

-11-

JURY INSTRUCTION NO. 1B

## EVIDENCE

Evidence consists of the answers given by witnesses and the exhibits that were received in evidence. There are two types of evidence which you may use. One type of evidence is called direct evidence. An example of this is when a witness testifies to what he said, heard or observed. What a witness sees, feels, touches or hears -- that is called direct evidence.

Circumstantial evidence is the second type of evidence. It is evidence that tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. As you were sitting here, someone walked in with an umbrella which was dripping wet. Somebody else then walked in with a raincoat which also was dripping wet.

Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But, on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from an established fact that existence or the nonexistence of some other fact. Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct and circumstantial evidence.

L. Ed. 2d 123, 95 S. Ct. 150 (1974).

In Edina State Bank, Edina bank (the "Bank") provided a loan to an individual; Mr. Price, and Mr. Price used his shares in a corporation, Mr. Steak, Inc. ("Mr. Steak") as collateral for the loan. Id. at 642. At the time Mr. Steak issued the stock to Mr. Price, he understood that the shares were restricted and for investment only. Id. When the bank foreclosed on the Mr. Steak stock and attempted to sell it, neither Mr. Steak nor its agent would register the transfer to the new owner. Mr. Steak maintained that its shares were purchased for investment, not for redistribution because it did not want to run afoul of federal securities laws. Thus, Mr. Steak maintained that no transfer of the shares could be made without notice to Mr. Steak or its counsel and without an opinion of counsel that the transfer would not violate the Securities Act. Id. at 643. Importantly, the certificated shares held by the Bank, as the Shares at issue in this case, did not have any restrictions on the face of them. Id. at 642.

The *Edina* court examined Colorado's code provision, identical to Guam's, and rejected Mr. Steak's argument. Id. at 643. In rejecting Mr. Steak's argument, the court noted that the Code "imposes a strict requirement for notice on the issuer." Id. Moreover, since "there was no legend conspicuously noting the restriction on transfer and no actual knowledge of it by the [Bank], we are persuaded the [Bank] is entitled to recover under §8-204 of the Code...." Id.

Similarly, Guam law provides that "[u]nless noted conspicuously on the security a restriction on transfer imposed by the issuer even though otherwise lawful is ineffective except against a person with actual knowledge of it." 13 G.C.A. § 8204. It is undisputed that the Shares fail to contain any restrictions of any kind. **Exhibit "A."** Thus, this one section of the Code renders Chamorro Equities entire argument meaningless. Compare **Exhibit "P."** ("[Chamorro Equities'] Articles of Incorporation are public records, available to the public from the Department of Revenue and Taxation ... Upon information and belief, MEC, and its counsel, as

-12-

JURY INSTRUCTION NO. 1C

CREDIBILITY OF A WITNESS

In deciding what the facts are, you must decide what testimony to believe and what testimony not to believe. In making that decision, you may take into account a number of factors, including the following:

1. Was the witness able to see, or hear, or know the things about which that witness testified?

2. How well was the witness able to recall and describe those things?

3. What was the witness' manner while testifying?

4. Did the witness have an interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case?

5. How reasonable was the witness' testimony considered in light of all the evidence in the case?

6. Was the witness' testimony contradicted or supported by what that witness had said or done at another time, or by the testimony of other witnesses, or by other evidence?

In deciding whether or not to believe a witness, keep in mind that people sometimes forget things. You need to consider, therefore, whether a contradiction is an innocent lapse of memory or an intentional falsehood. If you decide that a witness deliberately lied about something significant in this case, you should consider not believing anything that witness says. Or, if you think the witness lied about some things, but told the truth about others, you may simply accept the part that you think is true and ignore the rest.

part of their due diligence before entering into the transaction with Vivian McCurdy, would have obtained, and reviewed, a copy of [Chamorro Equities'] Articles as part of that process.") with 13 G.C.A. § 8204 ("[u]nless noted conspicuously on the security a restriction on transfer imposed by the issuer even though otherwise lawful is ineffective except against a person with actual knowledge of it.").

In other words, the duty to warn the public of a restriction, or the Restriction, is not on the purchaser of the stock, but on Chamorro Equities, the issuer. 13 G.C.A. § 8204; see also Edina State Bank, 487 F.2d at 642. Thus, under the law of Guam, a purchaser satisfies due diligence by examining the Shares to determine if there is a restriction, not by hunting for truffles at various government offices. If Chamorro Equities wanted to alert the public, or MEC, to the Restriction, it had a duty to do so by placing or referencing the Restriction on its certificated shares. 13 G.C.A. § 8204. Chamorro Equities even recognized this duty as it placed this notice requirement in its own By-Laws, *but still failed to note any restrictions on the Shares*. **Exhibit "Q"** at § 7.05.03(iii); see also **Exhibit "A."**

Put bluntly, Chamorro Equities ignored its legal duty, and its own By-Laws, and now seeks to hold an innocent third party responsible for its own shortcomings. Importantly, Chamorro Equities refused to admit or deny any admissions relating to the transaction between Mrs. McCurdy and MEC because the information relating to it is "solely within the knowledge of adverse parties to this litigation." **Exhibit "K"** at pp. 2-3, Requests 6-8. As Chamorro Equities isn't aware of the facts relating to the transaction between MEC and Mrs. McCurdy, it is bound by the facts as it finds them. Unequivocally, MEC had no notice of any restrictions on the Shares. See Declaration of Melissa V. Torres, filed contemporaneously herewith. Because MEC had no actual notice of the Restriction, and because Chamorro Equities failed to place or reference the Restriction on the Shares, MEC is not and cannot be bound by the Restriction.

-13-

Inconsistencies or discrepancies in the testimony of a witness, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; innocent mis-recollection and/or failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail; and whether the discrepancy results from innocent error or intentional falsehood. The weight of the evidence presented by each side does not necessarily depend on the number of witnesses testifying on one side or the other. You must consider all the evidence in the case, and you may decide that all testimony of a smaller number of witnesses on one side has greater weight than that of a larger number on the other.

JURY INSTRUCTION NO. 1D

---

THE PEOPLE AS A PARTY BURDEN OF PROOF

The fact that the prosecution is brought in the name of the People of Guam entitles them to no greater consideration than that accorded to any other party. All parties, whether the People or individuals, stand as equals in the court.

The law presumes a defendant to be innocent of a crime. A defendant, although accused, begins trial with a "clean slate," with no evidence against him. The law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the accused. The presumption of innocence alone is sufficient to acquit a defendant, unless after a careful and impartial consideration of all the evidence in the case, the jurors are satisfied beyond a reasonable doubt of the defendant's guilt.

13 G.C.A. § 8204. Importantly, that means that Chamorro Equities is currently violating the law of Guam by failing to register MEC as a shareholder, 13 G.C.A. § 8401(2), and failing to recognize MEC's voice in Corporate Operations. Equitable relief is both necessary and required in this case. But, even if the Restriction was valid, and even if it was placed on the Shares, Chamorro Equities would still be violating MEC's rights as a shareholder.

**C.    Because Chamorro Equities had notice of the transaction and ignored the notice, it lost any right of first refusal it may have had.**

Assuming, *arguendo,* that Chamorro Equities placed the Restriction on the Shares, its position in this case is still untenable. This is because the Restriction has a time limit. For example, the Restriction requires Chamorro Equities to exercise its option within 30 days of its shareholder offering the stock. It is clear that Chamorro Equities is still, petulantly, waiting for Mrs. McCurdy to offer to sell the Shares she does not own. **Exhibit "K"** at p. 9, Request 44. This is an untenable and unreasonable position.

Chamorro Equities had notice of the transaction almost two years ago. **Exhibits "B" & "C."** Importantly, when an owner makes a reasonable disclosure of the terms of a proposed sale to another, the holder of the right of first refusal has a duty to undertake a reasonable investigation of any terms unclear to him. Koch Indus., Inc. v. Sun Co., Inc., 918 F.2d 1203, 1212 (5th Cir. 1990). Moreover, and more importantly, on September 26, 2012, the same day as the pledge of shares in this matter, **Exhibits "D" through "G,"** Mrs. McCurdy caused Chamorro Equities to send another letter regarding the status of the Shares vis-à-vis the impending transfer, and Chamorro Equities, again, ignored the transaction without undertaking any investigation. See **Exhibit "R."** In other words, Chamorro Equities, on the day Mrs. McCurdy pledged the Shares, ignored the transaction.

Almost a year later, Chamorro Equities attempted to hire the undersigned to represent it in this litigation. See Razzano Dec., at ¶ 21, see also Emails from Bill Mann and Daniel Berman,

-14-

It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. Reasonable doubt is defined as follows: "It is not a mere possible doubt because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the mind of the trier of fact in that condition that he cannot say he feels an abiding conviction to a moral certainty, of the truth of the charge."

The jury will remember that a defendant is never to be convicted on mere suspicion or conjecture. The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant; for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. If the jury, after careful and impartial consideration of all the evidence in the case, has a reasonable doubt that a defendant is guilty of the charge, it must acquit.

If the jury views that the evidence in the case as reasonably permitting either of two conclusions -- one of innocence, the other of guilty -- the jury should adopt the conclusion of innocence.

JURY INSTRUCTION NO. 1E

---

JUSTIFIED USE OF FORCE ON A MINOR

A person responsible for the care and supervision of a minor less than eighteen years of age, may use necessary force upon the minor for the purpose of safeguarding or promoting his welfare, including prevention and punishment of his misconduct. The force used for this purpose must not be intended to cause or know to create a substantial risk of causing extreme pain or gross degradation. These facts must be shown by a preponderance of the evidence.

attached to the Razzano Dec., and incorporated by reference as **Exhibit "S."** At this meeting, before there were any substantive discussions, Chamorro Equities was, yet again, informed that the sale had already taken place and that the undersigned could not represent it, as there was an irreparable conflict of interest due to the fact that MEC owned the Shares. Again, Chamorro Equities did nothing with this information and instead decided to sit on its remedies awaiting Mrs. McCurdy's offer to sell something *that she no longer owned.*

As Chamorro Equities was on reasonable notice of a proposed transaction, before, during and after the transaction, <u>see</u> **Exhibits "B," "C," & "R,"** <u>see</u> <u>also</u> Razzano Dec., at ¶ 21, it had a duty to investigate it to preserve its rights. <u>Koch Indus., Inc.</u>, 918 F.2d at 1212. It failed to do so. It failed to investigate on September 10, 2012, September 26, 2012, and again on August 20, 2013. This is important because under the transfer of property to a third party in violation of a right of first refusal creates "an enforceable option in the rightholder." <u>Koch</u>, 918 F.2d at 1211. Thus, a transfer of property in violation of a valid right of first refusal gives rise to an enforceable option to Chamorro Equities, but the option "is not perpetual and [Chamorro Equities] must choose between exercising it or acquiescing in the transfer of property." <u>Id</u>. It is clear that Chamorro Equities acquiesced on September 10, 2012, on September 26, 2012 and again on August 20, 2013. When Chamorro Equities finally decided to "exercise" its option on December 9, 2013, more than a year had elapsed from September 2012, and months had elapsed since August 20, 2013. Moreover, the "exercise" of the option was not an actual offer to purchase anything. **Exhibit "J."** As such, Chamorro Equities lost its right of first refusal, <u>Koch</u>, 918 F.2d at 1211, if it ever had one to begin with, and is required to register the Shares in MEC's name. 13 G.C.A. § 8201.

### CONCLUSION

As discussed above, the issues in this case highlight the problems with Chamorro

-15-

## II. SPECIFIC DEFINITIONS

### JURY INSTRUCTION NO. 2A

---

### "FAMILY VIOLENCE" DEFINED

A person is guilty of family violence if that person, not acting in self-defense or in the defense of others, recklessly causes or attempts to cause a family member or household member bodily injury.

### JURY INSTRUCTION NO. 2B

---

### "ASSAULT" DEFINED

A person is guilty of assault if he recklessly causes or attempts to cause bodily injury to another.

### JURY INSTRUCTION NO. 2C

---

### "RECKLESSLY" DEFINED

A person acts recklessly, or is reckless, with respect to attendant circumstances or the result of his conduct when he acts in awareness of a substantial risk that the circumstances exist or that his conduct will cause the result and his disregard is unjustifiable and constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation.

Equities' position: its disputes, and therefore its remedies if any, are against Mrs. McCurdy, not MEC. Chamorro Equities failed to place or reference the Restriction on the Shares. Bluntly, Chamorro Equities failed to warn the public and MEC that its shares were restricted. It now wants to hold an innocent third party, MEC, responsible for its failures. This is wrong. Moreover, Chamorro Equities knew of the proposed transfer on at least three prior occasions and failed to exercise its rights. Again, it seeks to hold MEC responsible for its failures. This is unacceptable. That Chamorro Equities continues to attempt to enforce its "rights" against MEC demonstrates how misguided and unfair this process is to MEC. For these foregoing reasons, MEC respectfully requests that this Court issue a permanent injunction ordering Chamorro Equities and it rogue officers to: (1) stop all cash disbursements until this Court has determined actual ownership of the Shares; (2) declare any elections held by shareholders of Chamorro Equities void that did not include MEC as a participant; and (3) any other relief as the Court finds in its discretion.

Respectfully submitted at Hagåtña, Guam, on June 16, 2014.

**CIVILLE & TANG, PLLC**

By: _____
JOSEPH C. RAZZANO

-16-

JURY INSTRUCTION NO. 2D

---

## "BODILY INJURY" DEFINED

Bodily Injury means a physical pain, illness, unconsciousness or any impairment of physical condition.

JURY INSTRUCTION NO. 2E

---

## "FAMILY MEMBER" DEFINED

Family or household members include:

i)      Adults or minors who have lived together;

ii)     Adults or minors who are related or formerly related by marriage;

iii)    Adults who are related by blood to the fourth degree of affinity.

JURY INSTRUCTION NO. 2F

---

## "SELF-DEFENSE" DEFINED

The use of force upon or toward another person is justifiable when the defendant believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**THOMPSON GUTIERREZ & ALCANTARA**
A Limited Liability Company
238 Archbishop Flores Street
Suite 801, DNA Building
Hagåtña, Guam 96910
Telephone: (671) 472-2089
Facsimile: (671) 477-5206

Attorneys for Plaintiff Chamorro Equities, Inc.

FILED
SUPERIOR COURT

2014 JUL 14 PM 3: 15

CLERK OF COURT
BY: _____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| CHAMORRO EQUITIES, INC., ) <br><br> Plaintiff, ) <br><br> vs. ) <br><br> VIVIAN McCURDY, LISA ULLOA, and ) FREDERICK ULLOA, ) <br><br> Defendants. ) <br> _____ ) <br> ) <br> VIVIAN McCURDY, WALTER D. ULLOA,) JUDITH E. OLIVER, and LISA ULLOA, ) <br><br> Counterclaim-Plaintiffs, ) <br><br> vs. ) <br><br> CHAMORRO EQUITIES, INC., ROBERT V.,) ULLOA, GERALD D. HARTWICK, ) KENNETH E. THOMPSON, PRISCILLA U. ) HARTWICK, SHEILA M. MANALOTO, ) AND DOES 2-10, ) <br><br> Counterclaim-Defendants. ) <br> _____ ) <br> ) <br> MEC, LLC, ) <br><br> Intervenor. ) <br> _____ ) | **CIVIL CASE NO. CV0408-13** <br><br><br><br><br><br> **CEI'S OPPOSITION TO MEC, LLC'S MOTION FOR INJUNCTIVE RELIEF** |

## ORIGINAL

MJ'b

## INSTRUCTIONS TO BE CONSIDERED AS A WHOLE

If any rule, direction or idea has been repeated or stated in different ways in these instructions, no emphasis was intended and you must not draw any inference because of its repetition. Do not single out any particular sentence of any individual point or instruction and ignore the others. Consider the instructions as a whole and each in light of all the others.

Plaintiff Chamorro Equities, Inc. ("CEI") submits this opposition to the motion for injunctive relief filed by Intervenor MEC, LLC ("MEC"). CEI opposes the motion on both procedural and substantive grounds.

## I.     FACTUAL SUMMARY

CEI was incorporated under Guam law in 1987. A copy of the Articles of Incorporation for CEI is attached as Exhibit O to the declaration of Joseph Razzano filed herein June 16, 2014 ("Razzano Declaration").

The incorporators, who then each held an equal number of shares in CEI, were seven siblings from the Ulloa family (Lucy, Alvin, Paul, Esther, George, Vivian and June).[1] The purpose of incorporating CEI was to own, manage, and develop real property which had been inherited by the Ulloa siblings from their parents. Declaration of Gerald Hartwick. It is undisputed that another purpose of CEI is to provide income to this first generation of the Ulloa siblings.[2]

To effectuate that purpose, Section 4.3 of the Articles provides that:

> Shares of stock in this corporation shall not be transferred or
> sold except pursuant to the provisions of Article Five, infra...

Article Five is captioned "Limitations on Transfer of Stock." Section 5.1 of the Articles provides:

---

[1]   The original incorporators also included three members of the Lujan family, who originally held a one-eight interest in CEI, but they later sold their shares back to CEI. Declaration of Gerald Hartwick.

[2]   See Opposition to Motion for Partial Summary Judgment filed May, 6, 2014, at p. 3, by Vivian McCurdy, *et al.*

1

## ALL INSTRUCTIONS NOT NECESSARILY APPLICABLE

The purpose of the court's instructions are to provide you with the applicable law so that you may arrive at a just and lawful verdict. Whether some instructions apply will depend upon what you find to be the facts. Disregard any instruction which applies to the facts determined by you not to exist. Do not conclude that because an instruction has been given that I am expressing an opinion as to the facts.

> No shareholder shall transfer, alienate, or in any way dispose of any share of stock of the corporation unless such share shall first be offered for sale to the corporation.

Section 5.1 continues:

> The corporation reserves and shall have exclusive right and option to purchase such shares at a price equal to the book value thereof within thirty (30) days after such offer.

Section 5.1 concludes:

> It is the intent that all restrictions herein contained and imposed upon the sale or transfer of shares shall apply to all shares, whatsoever, or by whomsoever acquired, ... whether acquired through voluntary or involuntary acts of a shareholder or by operation of law...

Over the years, CEI continued to be owned and operated by the Ulloa siblings, and their children, but a rift developed between two sides of the family. As set out in the filings herein, when Vivian McCurdy, and her faction, managed CEI from 2011 to 2013, there were a number of irregularities. See CEI's motion for partial summary judgment, and supporting declarations, filed April 8, 2014 herein.

Those irregularities include that when Vivian McCurdy was a director and officer of CEI, she obtained "loans" from CEI in excess of $236,000.00 in 2012. As Mrs. McCurdy has made no payments on those "loans," CEI has, since July 2013, offset the amount due to CEI under the "loans" to her against the amount she would otherwise receive on a monthly basis as shareholder of CEI. Declaration of Gerald Hartwick.

CEI first became aware of MEC's claim to own Vivian's shares in November 2013. *See* Exhibit H to Razzano Declaration. In response, CEI advised MEC that CEI intended to exercise its right of first refusal. Exhibit J to Razzano Declaration. In particular, CEI

2

## PEOPLE HAVE BURDEN TO PROVE EACH AND EVERY ELEMENT

## OF AN OFFENSE CHARGED

The People of Guam have the burden of proving every element of an offense charged beyond a reasonable doubt. If after a careful and impartial consideration of all the evidence, you find that the People did not prove one or more of the elements of an offense charged beyond a reasonable doubt, then it is your duty to find the defendant not guilty.

requested that MEC provide: "the current indebtedness of Vivian McCurdy to MEC, LLC, along with documentation to confirm the amount due." *Ibid.* CEI explained that such information was requested "in the event that the current amount of Vivian McCurdy's indebtedness defines the amount CEI must pay to obtain Vivian McCurdy's stock." Finally, CEI expressly reserved its right to pay book value for the shares. *Ibid.*

MEC never provided the information requested by CEI. Declaration of Gerald Hartwick. Even as of the date of this memorandum, Mrs. McCurdy has failed to offer her shares for purchase to CEI. *Ibid.*

## II. MOTION ALLEGES FACTS & SEEKS RELIEF NOT PLED

Under the Guam Rules of Civil Procedure, modeled after their federal counterparts, "notice pleading" setting forth a party's claims is generally all that is required. The purpose of such pleading is to provide fair notice to the opposing party of the facts and claims at issue. Phoenix Energy Sales Co. v. Goodman, 960 F.Supp. 1253, 1256 (E.D.Mich.1997) (complaint must give the defendants fair notice of the plaintiff's claim and the grounds upon which it rests). However, MEC's motion asserts facts, and seeks relief, that is nowhere to be found in its pleading herein. The motion should be denied on that basis alone.

A review of MEC's pleading, filed March 12, 2014, herein fails to disclose the allegations and claims set forth in its motion. In fact, MEC, in its pleading, seeks the exact opposite type of relief than that set forth in its motion. In its pleading, MEC demands that CEI: "Immediately declare and pay the monthly cash distribution and dividend to all of the shareholders." MEC's Answer to Second Amended Complaint and Counterclaims, filed

3

## CONSIDER EACH CHARGE SEPARATELY

A separate crime is charged in each charge of the indictment. Each charge, and the evidence pertaining to it, should be considered separately by the jury. The fact that you may find the defendant guilty or not guilty as to one of the charges should not control your verdict as to any other charge.

Authority: *Federal Jury Practice and Instructions* § 12.12 (6th ed. 2008)

March 12, 2014, at p. 18. However in its motion, MEC instead demands that the court "stop all cash distributions or dividends" to all other shareholders of CEI. MEC's Motion at p. 1.

MEC's Motion goes on to demand that the court order that CEI's shareholder and Board meetings held on June 11, 2014 be held void. As MEC's pleading herein was filed March 12, 2014, MEC obviously failed to include any allegations as to a meeting held three months *after* its filing. As MEC's motion asserts facts and seeks relief not pled in its pleading, the court should deny the motion.[3]

### III. MEC FAILS TO MEET THE TEST FOR INJUNCTIVE RELIEF

Under Guam law, a party seeking a preliminary injunction must establish: (1) irreparable injury; and, (2) likelihood of success on the merits. Hong Kong Banking Corp. v. Kallingal, 2005 Guam 13, at ¶18. *See also* Amoco Production Co. v. Village of Gambell, 480 U.S. 531, 542, 107S.Ct. 1396, 94 L.Ed.2d 542 (1987) (basis for injunctive relief is irreparable injury and inadequacy of legal remedies; court must balance competing claims of injury and must consider the effect of granting or denying the requested relief).

### A. No Irreparable Injury

MEC asserts that it is being denied the monthly "dividend" payable to CEI's shareholders. But it is obvious that monetary damages are adequate remedy for the loss of such payments. *See* Hong Kong Banking Corp. v. Kallingal, 2005 Guam 13, at ¶23-24 (even loss of real property does not constitute irreparable injury when monetary damages

---

[3] MEC's motion to amend its pleading filed June 20, 2014, is a tacit admission that its current pleading does not support the claims set forth in its motion for injunctive relief. MEC has put the cart before the horse, in that MEC should obtained leave to file an amended pleading containing the claims asserted in its motion for injunctive relief *before* filing that motion.

## ACTIVITIES NOT CHARGED

You are here only to determine whether the defendant is guilty or not guilty of the charges in the indictment. The defendant is not on trial for any conduct or offense not charged in the indictment.

Authority: *9th Circuit Model Criminal Jury Instruction* 3.10 (2010)

are adequate remedy). *See also,* <u>Benavente v. Taitano</u>, 2006 Guam 20, at ¶19-20 (request for injunctive relief denied when there was an adequate remedy at law). Here, MEC cannot establish irreparable injury.

In its motion, MEC's requests that the court "stop all cash distributions or dividends" to the *other* shareholders until the ownership rights to Mrs. McCurdy's shares have been determined. MEC fails to explain how it suffers any injury if *other* shareholders, who have an undisputed ownership right in shares in CEI, receive the payments that even MEC does not dispute they are entitled to as shareholders.

For example, MEC does not assert, let alone offer any proof, that CEI does not have the ability to pay the distributions to MEC should the court ultimately make a determination that MEC does indeed lawfully own the shares, and had a right to the distribution. In fact, MEC, in its own pleading herein, alleged that CEI has a monthly income of $140,000.00. MEC's Answer to Second Amended Complaint and Counterclaims, filed March 12, 2014, at ¶44. Further, MEC alleged that CEI is financially sound, and has "more than sufficient income, retained earnings, or surplus profits" to pay monthly cash dividends. *Ibid.,* at ¶46. MEC has completely failed to make any showing of irreparable injury sufficient to justify the court ordering CEI to not pay the monthly distributions to the other shareholders.

MEC also claims that it was denied the right to vote shares in CEI.[4] But as explained below, MEC does not currently own the shares, and the purported transfer to MEC is subject to a right of first refusal. MEC is not likely to succeed on the merits.

---

[4] While not dispositive of this issue, it should be noted that MEC acknowledges that, even if it owned Mrs. McCurdy's shares, it and the other members of the Ulloa family opposed to the

5

## JUROR OBLIGATION

In determining the facts, the jury is reminded that before each member was accepted and sworn to act as a juror, he or she was asked questions concerning competency, qualifications, fairness and freedom from prejudice and bias. On the faith of those answers, each juror was accepted by the parties. Therefore, those answers are as binding on each of the jurors now as they were then, and should remain so, until the jury is discharged from consideration of this case.

## B. No Likelihood of Success

### 1. No Evidence that MEC Lawfully Owns the Shares.

Under Guam law, a secured creditor, such as MEC, does not automatically own the collateral when the debtor defaults. If the creditor wishes to retain the collateral as full satisfaction of the debt, the creditor must make such proposal in writing to the debtor *after* the debtor's default. 13 G.C.A. § 9505(2). The debtor then has 21 days in which to respond. *Ibid.* If the creditor fails to submit such proposal, the debtor retains his or her right to redeem the shares. 13 G.C.A. § 9504. The debtor cannot validly agree to waive these requirements prior to default. 13 G.C.A. § 9505(2).

These Guam statutes are modeled after similar provisions from the Uniform Commercial Code. Cases from other jurisdictions interpreting similar provisions hold that unless the required proposal is given to the debtor, the creditor does not own the shares. In re CBGB Holdings, LLC, 439 B.R. 551, 554-55 (Bank.S.D.N.Y 2010) (Debtor cannot validly consent, prior to default, that creditor may keep collateral in satisfaction of debt, or to a waiver of the statutory requirements for same); In re Cadiz Properties, Inc., 278 B.R. 744, 748-49 (Bank.N.D.Tex.2002) (As there was nothing in the record to show that debtor, *post default*, had waived its rights as to the statutory requirements, creditor had failed to comply with lawful requirements for it to keep collateral in satisfaction of debt).

*See* Emmons v. Lemaster, 10 P.3d 33, 36 (Kans.App.2000) (creditor failed to comply with U.C.C. provision as to notice of proposal to retain collateral in satisfaction of

current management of CEI remain a minority, and are unable to out-vote the current majority group of the Ulloa family. *See* MEC's pleading filed March 12, 2014, at ¶87-89.

# JURY INSTRUCTION NO. 2B

## JURY NOT TO TAKE CUE FROM THE JUDGE

I have not intended by anything I have said or done, or by any questions that I may have asked, or by any ruling I may have made, to intimate or suggest what you should find to be facts, or that I believe or disbelieve any witness.

If anything I have done or said has seemed to so indicate, you will disregard it, and form your own conclusion.

debt); Chen v. Profit Sharing Plan of Dr. Donald H. Bohne, DDS, 456 S.E.2d 237, 240 (Ga.App.1995) (same).

See also Patrick v. Wix Auto Co., Inc., 681 N.E.2d 98, 101 (Ill.App.1997) (creditor must strictly comply with notice provisions in order to retain collateral).

In this case, MEC has failed to provide any evidence that it complied with the requirements of 13 G.C.A. § 9505(2). Further, MEC has failed to provide any evidence that Vivian McCurdy waived, *post-default*, her rights under that same statute. The letter from MEC's counsel in October 2013, Exhibit H to Razzano Declaration, merely advises Mrs. McCurdy that she is in default, and does not propose to retain her shares in satisfaction of the debt. Based on the lack of the required proof of compliance with 13 G.C.A. § 9505(2), MEC has failed to comply with the lawful requirements for it to retain the shares in CEI. MEC has thus failed to establish that it owns the shares in question.

2. CEI's Right of First Refusal Remains in Effect.

MEC asserts that CEI was put on notice of Mrs. McCurdy's pledge of her shares through the letter by its counsel to CEI's *de facto* secretary in September 2012. MEC goes on to suggest that because CEI did not assert its right of first refusal at that time, CEI has somehow waived that right.

However, MEC fails to understand that a shareholder's pledge of stock is not an event which would trigger a right of first refusal to purchase the shares. See Guice v. Sentinel Tech., 689 N.E.2d 355, 360-61 (Ill.App.1997). Even if CEI was aware of the share pledge at that time, such event did not trigger CEI's right of first refusal. A right of first refusal, by its very nature, can accrue only when there is an offer to sell.

7

## JUROR FORBIDDEN TO MAKE AN INDEPENDENT INVESTIGATION

You must decide all questions of fact in this case from the evidence received in this trial and not from any other source.

You must not make any independent investigation of the facts or the law or consider or discuss facts as to which there is no evidence. This means, for example, that you must not on your own visit the scene, conduct experiments, or consult reference works or persons for additional information.

You must not discuss this case with any other person except a fellow juror, and you must not discuss the case with a fellow juror until the case is submitted to you for your decision and only when all jurors are present in the jury room.

CEI first became aware of MEC's claim to own Vivian's shares in November 2013. Exhibit H to Razzano Declaration. In December, 2013, CEI advised MEC that CEI intended to purchase Mrs. McCurdy's shares. Exhibit J to Razzano Declaration. In particular, CEI requested that MEC provide "the current indebtedness of Vivian McCurdy to MEC, LLC, along with documentation to confirm the amount due." *Ibid.* CEI explained that such information was requested "in the event that the current amount of Vivian McCurdy's indebtedness defines the amount CEI must pay to obtain Vivian McCurdy's stock." Finally, CEI expressly reserved its right to pay book value for the shares. *Ibid.*

However, MEC never forwarded the requested information. Mrs. McCurdy has never offered her shares to CEI. In March, 2014, CEI filed counterclaims against MEC and Mrs. McCurdy in this case, seeking to enforce its right of first refusal.

As MEC has not complied with the requirements of 13 G.C.A. § 9505(2), Mrs. McCurdy still owns the shares, and has the right to redeem those shares from default. 13 G.C.A. § 9506. Further, in the event that MEC, at some point, submits a proposal which complies with § 9505(2), Mrs. McCurdy can object, and require that the collateral be sold at auction under 13 G.C.A. § 9504(3). CEI could even assert its right of first refusal at such a forced sale, as the highest bidder at the sale.

Share transfer restrictions, like those in CEI's articles, are common in closely held corporations, to assure that ownership by a tightly-knit group will not pass to strangers incompatible to that group. *See* Jandel v. Precision Colors, Inc., 19 B.R. 415, 419 (S. D. Ohio 1982). The purpose of the share transfer restrictions in CEI's articles was to keep the

8

## JURY NOT TO CONSIDER PUNISHMENT

The question of possible punishment of the defendant is of no concern to the jury and should not, in any sense, enter into or influence your deliberations. The duty of imposing sentence rests exclusively upon the court. Your function is to weigh the evidence in the case and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence. Under your oath as jurors, you cannot allow a consideration of the punishment which may be imposed upon the defendant, if he is convicted, to influence your verdict, in any way, or in any sense, enter into your deliberations.

Ulloa family's real property within the family. Under these circumstances, CEI's ability to exercise its right of first refusal remains in effect, and has not been waived.

3.     Inadequate Factual Support for MEC's Claim of Lack of Knowledge.

MEC, in its motion, tacitly acknowledges that the share transfer restriction in CEI's Articles is effective and would be binding if it had been aware of such restrictions at the time it took a security interest in the shares, pursuant to 13 G.C.A. § 8204. To support its motion, MEC offers the declaration of Melissa Torres, a member of MEC, who states that she was not aware of the restriction. However, there is no similar declaration from the other two members of MEC.[5] Instead, all that is offered by MEC is Melissa's hearsay testimony as to what her brothers told her. MEC's reliance on hearsay raises suspicions and the court should not rely on such hearsay.

After MEC filed its motion for injunctive relief, CEI noticed the depositions of MEC and Christopher Torres, who executed the stock pledge agreement, and related documents, on behalf of MEC with Vivian McCurdy.[6] If MEC truly had no knowledge of the share transfer restriction, one might think that MEC, and its members of MEC, would be eager to so testify under oath as to this fact.

However, MEC has actively thwarted CEI's ability to effectively oppose the motion. MEC filed a motion for a protective order the day before its scheduled deposition,

_____

[5]   It should go without saying that it is now too late for MEC to try to correct this failure. Rule 6 of the GRCP requires that all affidavits or declarations supporting a motion must be filed and served with the motion. The court should not entertain any untimely filings from MEC in this regard.

[6]   A copy of each of those notices is attached hereto collectively as Appendix "1."

9

# JURY INSTRUCTION NO. 2E

## JUROR'S USE OF NOTES

You were given notebooks and pencils. You will be able to take them into the jury room when you deliberate.

A word of caution: You were allowed to take notes. Remember you are the judges of the believability of witnesses.

Notes are only an aid to memory and should not take precedence over recollection. A juror who does not take notes should rely on his or her recollection of the evidence and not be influenced by the fact that other jurors do take notes. Notes are for the note-taker's own personal use in refreshing his or her recollection of the evidence.

Finally, should any discrepancy exist between a juror's recollection of the evidence and a juror's notes, or between one juror's recollection and that of another, you may request a playback of the relevant testimony which must prevail.

blocking its deposition until the court rules on that motion. Further, the process server engaged to serve the deposition subpoena on Christopher Torres filed a declaration of non-service, stating that Mr. Torres appeared to have been evading service. Declaration of Christopher Allen, filed July 8, 2014.

The Supreme Court, under similar circumstances, held that when a non-movant points to specific facts which raise doubt as to the credibility of the proffered evidence, the non-movant is entitled to a trial. In <u>Guam Sanko Transportation, Inc. v. Pacific Modair Corp.</u>, 2012 Guam 2, a motion for summary judgment was supported by the declaration of one witness to a purported oral agreement, the other person to the alleged oral being deceased. The party opposing the motion had not filed a declaration expressly contradicting the declarant's statements as to the purported oral agreement. Instead, the opposing party noted the serious reasons to doubt the declarant's credibility. The Supreme Court agreed with the opposing party, finding that the trial court should not have granted summary judgment under the circumstances.

The Court noted that evidence of bias on the part of the declarant was enough to require cross-examination and to overcome summary judgment. <u>Guam Sanko Transportation, Inc, supra</u>, at ¶11. The Court went on to note that:

> Moreover . . . especially when the basic facts are within the defendant's exclusive control, credibility questions are important issues which should be presented and preserved for decision by the ultimate fact-finder.

<u>Guam Sanko Transportation, Inc, supra</u>, at ¶12.

# JURY INSTRUCTION NO. 2F

## COMMUNICATIONS WITH THE COURT

Your request for testimony - in fact any communication with the court - should be made to me in writing, signed by your foreperson, and given to one of the marshals. I will respond to any questions or requests you have as promptly as possible, either in writing or by having you return to the courtroom so I can speak with you in person. In any event, do not tell me or anyone else how the jury stands on the issue of the defendant's guilt until after a unanimous verdict is reached.

In this case, MEC's knowledge as to its due diligence and its awareness of the share transfer restriction are within MEC's exclusive control. MEC has actively thwarted CEI's attempts to conduct discovery as to these issues.

Further, it defies common sense that MEC, in making a loan of $500,000.00 to Mrs. McCurdy to be secured only by her shares in CEI, would not have reviewed CEI's Articles. On September 7, 2012, MEC, thorough counsel, contacted CEI's then *de facto* secretary, Judith Oliver, to inquire about the status of Mrs. McCurdy's shares. Exhibit B to Razzano Declaration. This was roughly two weeks before entering into the stock pledge agreement. Given this evidence of MEC's efforts, through counsel, to conduct due diligence before entering into the stock pledge agreement, it strains credulity that MEC, or its counsel, did not review CEI's articles as part of that due diligence.

The only "support" offered by MEC for its claim that it was unaware of the share transfer restriction in CEI's articles is the declaration of Melissa Torres, one of three members of MEC. As a member of MEC, she certainly is biased, and has an incentive to deny any knowledge of the share transfer restrictions, for if MEC was aware of the restriction, it would then lose any security for the $500,000 it claims was lent to Mrs. McCurdy. Perhaps this explains why MEC relies on hearsay as "support" for its claim as to lack of such knowledge.

All of this raises serious credibility issues, and CEI should be allowed to conduct the relevant discovery. In any event, there is sufficient evidence of bias, and questions of credibility as to MEC's prior knowledge of the share transfer restriction to require a

11

## IMPROPER CONSIDERATIONS: RACE, RELIGION,

## NATIONAL ORIGIN, SEX OR AGE

Your verdict must be based solely upon the evidence developed at trial or the lack of evidence.

It would be improper for you to consider, in reaching your decision as to whether the People sustained its burden of proof, any personal feelings you may have about the witnesses and defendant's race, religion, national origin, sex or age. All persons are entitled to the presumption of innocence and the People have the same burden of proof as to all persons.

It would be equally improper for you to allow any feelings you might have about the nature of the crime charged to interfere with your decision-making process.

To repeat, your verdict must be based exclusively upon the evidence or the lack of evidence in this case.

determination of these issues by the finder of fact. MEC has failed to show that it is likely to succeed on the merits.

## IV.   CONCLUSION

Based on the forgoing, the Court should deny MEC's motion for injunctive relief.

Dated this 14th day of July, 2014.

THOMPSON GUTIERREZ & ALCANTARA, LLC
Attorneys for Plaintiff Chamorro Equities, Inc.

By: _____
MITCHELL F. THOMPSON

P143166.MFT

12

## CONDUCT OF COUNSEL

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. Counsel also have the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. All those questions of law must be decided by me, the court. You should not show any prejudice against an attorney or his client because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury or asked the court for a ruling on the law.

As I already indicated, my ruling on the admissibility of evidence does not indicate any opinion about the weight or effect of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

**THOMPSON GUTIERREZ & ALCANTARA**
A Limited Liability Company
238 Archbishop Flores Street
Suite 801, DNA Building
Hagåtña, Guam 96910
Telephone:  (671) 472-2089
Facsimile:   (671) 477-5206

Attorneys for Plaintiff Chamorro Equities, Inc.

FILED
SUPERIOR COURT
OF GUAM

2014 JUN 20 PM 1:14

CLERK OF COURT

BY:_____ _ _ ___

BERMAN O'CONNOR & MANN
RECEIVED

JUN 20 2014
Time: 1:24pv
By: ____

## IN THE SUPERIOR COURT OF GUAM

|  |  |  |
|---|---|---|
| CHAMORRO EQUITIES, INC., | ) | CIVIL CASE NO. CV0408-13 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
| VIVIAN McCURDY, LISA ULLOA, and FREDERICK ULLOA, | ) |  |
|  | ) |  |
| Defendants. | ) | **NOTICE OF DEPOSITION** |
|  | ) |  |
|  | ) | **July 3, 2014 at 9:00 a.m.** |
| VIVIAN McCURDY, WALTER D. ULLOA, JUDITH E. OLIVER, and LISA ULLOA, | ) |  |
|  | ) |  |
| Counterclaim-Plaintiffs, | ) |  |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
| CHAMORRO EQUITIES, INC., ROBERT V. ULLOA, GERALD D. HARTWICK, KENNETH E. THOMPSON, PRISCILLA U. HARTWICK, SHEILA M. MANALOTO, AND DOES 2-10, | ) |  |
|  | ) |  |
| Counterclaim-Defendants. | ) |  |
|  | ) |  |
| MEC, LLC, | ) |  |
|  | ) |  |
| Intervenor. | ) |  |

**APPENDIX 1**   COPY

**RECEIVED**
CIVILLE & TANG
A Professional Limited Liability Company

DATE: 6/20/14
TIME: 1:44 ☐A.M ☑P.M BY: ___

## PRODUCTION OF ALL AVAILABLE EVIDENCE NOT REQUIRED

Neither side is required to call as witnesses all persons who may have been present at any of the events disclosed by the evidence or who may appear to have some knowledge of these events, or to produce all objects or documents mentioned or suggested by the evidence.

If weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory evidence was within the power of the party, the evidence offered should be viewed with distrust.

Please take notice that Plaintiff Chamorro Equities, Inc. ("CEI") will take the deposition of Intervenor MEC, LLC, pursuant to Rule 30(b)(6) of the Guam Rules of Civil Procedure, on **July 3, 2014 at 9:00 a.m.**, at the law offices of Thompson Gutierrez & Alcantara, LLC, 238 Archbishop Flores Street, Suite 801, Hagåtña, Guam.

MEC, LLC is directed to designate a person, or persons, who shall be designated to testify on behalf of MEC, LLC regarding all information known or reasonably available to MEC, LLC with respect to the subject matters identified in Exhibit "1" attached hereto. CEI requests that MEC, LLC provide written notice at least five (5) business days before the deposition as to the names of the individuals designated to testify on behalf of MEC, LLC.

The deposition will be recorded both stenographically by a certified court reporter and by video recording. The recordings will be taken before a certified court reporter and notary public or other person authorized by law to administer oaths.

Dated this 20th day of June, 2014.

THOMPSON GUTIERREZ & ALCANTARA, LLC
Attorneys for Plaintiff Chamorro Equities, Inc.

By:_____
MITCHELL F. THOMPSON

P143130.MFT

1

# JURY INSTRUCTION NO. 3C

## INDICTMENT IS NOT EVIDENCE

With these preliminary instructions in mind, an indictment, which contains the charges against the defendant, will be provided to you during your deliberations. I remind you that an indictment itself is not evidence. It merely describes the charges made against the defendant. It is an accusation. It may not be considered by you as evidence of the guilt of the defendant.

In reaching your determination of whether the People have proven the defendant guilty beyond a reasonable doubt, you may consider only the evidence introduced or lack of evidence.

# EXHIBIT 1

In accordance with Rule 30(b)(6) of the Guam Rules of Civil Procedure, CEI designates the matters identified below for examination at the deposition. In construing the topics, all terms shall be construed to encompass as broad a range of information as permitted under the Guam Rules of Civil Procedure.

**The deponent shall be prepared to address the following topics:**

1.     The factual and legal bases for the allegations, and affirmative defenses, in MEC, LLC's Answer to Second Amended Complaint and Counterclaims, filed March 12, 2014 herein.

2.     The factual and legal bases for the denials and affirmative defenses in MEC, LLC's Answer to CEI's Counterclaim against MEC, LLC, filed May 6, 2014 herein.

3.     The investigation or review, if any, by MEC, LLC, or its agents or attorneys, of CEI's Articles of Incorporation prior to entering into any agreement with Vivian McCurdy as to her shares in CEI.

4.     The negotiations, if any, between MEC, LLC and Vivian McCurdy, or Richard McCurdy, as to MEC, LLC acquiring any interest of Vivian McCurdy in her shares in CEI.

5.     Any communications, written or oral, between MEC. LLC, or its agents and attorneys, with Vivian McCurdy, or Richard McCurdy, related to Vivian McCurdy's shares in CEI.

1

## RIGHT TO SEE EXHIBITS AND HEAR TESTIMONY

You are about to go into the jury room and begin your deliberations. The exhibits will be sent to you in the jury room. If you want any of the testimony played, that can also be done. But, please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting portions of testimony which you may want.

Your request for testimony should be made to me in writing, signed by your foreperson, and given to one of the marshals. I will respond to any questions or requests you have as promptly as possible, either in writing or by having you return to the courtroom so I can speak with you in person. In any event, do not tell me or anyone else how the jury stands on the issues of the defendant's guilt until after a unanimous verdict is reached.

6. Any payment by MEC. LLC to, or for, Vivian McCurdy or Richard McCurdy, related to Vivian McCurdy's shares in CEI.

7. Any communications, written or oral, between MEC, LLC, or its agents and attorneys, with CEI related to Vivian McCurdy's shares in CEI.

8. Any agreement by MEC, LLC with Vivian McCurdy or Richard McCurdy related to Vivian McCurdy's shares in CEI.

9. Any answer, statement, or response of MEC, LLC in response or opposition served by MEC, LLC to any discovery request by any party.

10. The factual and legal bases for the assertions in MEC, LLC's Motion for Injunctive Relief, and supporting memorandum and declarations, filed June 16, 2014 herein.

2

## DIRECT AND CIRCUMSTANTIAL EVIDENCE
### 1 of 2

There are two types of evidence which you may properly use in deciding whether a defendant is guilty or not guilty.

One type of evidence is called direct evidence. Direct evidence is where a witness testifies to what he said, heard or observed. In other words, when a witness testifies about what is known to him of his own knowledge by virtue of his own senses – what he sees, feels, touches or hears – that is called direct evidence.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse today the sun was shining and it was a nice day. Assume that you could not look outside.

As you were sitting here, someone walked in with an umbrella which was dripping wet. Somebody else then walked in with a raincoat, which also was dripping wet.

Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But, on the combination of facts, which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense, from an established fact, the existence or the nonexistence of some other fact.

**THOMPSON GUTIERREZ & ALCANTARA**
A Limited Liability Company
238 Archbishop Flores Street
Suite 801, DNA Building
Hagåtña, Guam 96910
Telephone: (671) 472-2089
Facsimile: (671) 477-5206

Attorneys for Plaintiff Chamorro Equities, Inc.

FILED
SUPERIOR COURT
OF GUAM

2014 JUN 20 PM 1: 14

CLERK OF COURT

BY:_____

BERMAN O'CONNOR & MANN
RECEIVED

JUN 20 2014
Time: 1:34pr
By: _____

IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| CHAMORRO EQUITIES, INC., | ) | CIVIL CASE NO. CV0408-13 |
| Plaintiff, | ) | |
| vs. | ) | |
| VIVIAN McCURDY, LISA ULLOA, and FREDERICK ULLOA, | ) | |
| Defendants. | ) | NOTICE OF DEPOSITION |
| | ) | July 7, 2014 at 9:00 a.m. |
| VIVIAN McCURDY, WALTER D. ULLOA, JUDITH E. OLIVER, and LISA ULLOA, | ) | |
| Counterclaim-Plaintiffs, | ) | |
| vs. | ) | |
| CHAMORRO EQUITIES, INC., ROBERT V. ULLOA, GERALD D. HARTWICK, KENNETH E. THOMPSON, PRISCILLA U. HARTWICK, SHEILA M. MANALOTO, AND DOES 2-10, | ) | |
| Counterclaim-Defendants. | ) | |
| MEC, LLC, | ) | |
| Intervenor. | ) | |

COPY

RECEIVED
CIVILLE & TANG
A Professional Limited Liability Company

DATE: 6/20/14
TIME: 1:44 ☐AM ☑PM BY: TMA

Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that before convicting a defendant, the jury must be satisfied of the defendant's guilt beyond a reasonable doubt from all the evidence in the case. It is for you to decide how much weight to give any evidence.

Also, if the circumstantial evidence as to any particular count is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, you must adopt that interpretation which points to the defendant's innocence, and reject that interpretation which points to his guilt.

If, on the other hand, one interpretation of such evidence appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable.

PLEASE TAKE NOTICE that on **July 7, 2014 at 9:00 a.m.,** at the law offices of Thompson Gutierrez & Alcantara, LLC, 238 A.F.C. Flores Street, Suite 801 DNA Building, Hagåtña, Guam 96910, Plaintiff Chamorro Equities, Inc., through its attorneys of record, Thompson Gutierrez & Alcantara, LLC, by Mitchell F. Thompson, Esq., will take the deposition of **CHRISTOPHER TORRES** upon oral examination pursuant to Guam Rules of Civil Procedure, before a notary public or an officer authorized by law to administer oaths.

The deposition will be recorded both stenographically by a certified court reporter and by video recording. The recordings will be taken before a certified court reporter and notary public or other person authorized by law to administer oaths.

Dated this 20th day of June, 2014.

**THOMPSON GUTIERREZ & ALCANTARA, LLC**
Attorneys for Plaintiff Chamorro Equities, Inc.

By:_____
**MITCHELL F. THOMPSON**

P143135.MFT

1

# JURY INSTRUCTION NO. 3F

## "INFERENCE" DEFINED (PRESUMPTIONS)

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exits on the basis of another fact which you know exists.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The People ask you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw, but not required to draw, from the facts which have been established by both direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

Here again, let me remind you that, whether based upon direct or circumstantial evidence, or upon logical, reasonable inferences drawn from such evidence, you must be satisfied of the guilt of the defendant beyond a reasonable doubt before you may convict.

FILED
SUPERIOR COURT

2014 JUL 14 PM 3: 44

CLERK OF COURT

BY: _____

BERMAN O'CONNOR & MANN
Suite 503, Bank of Guam Bldg.
111 Chalan Santo Papa
Hagåtña, Guam 96910
Telephone No.: (671) 477-2778
Facsimile No.: (671) 477-4366

Attorneys for Counterclaim Defendants:
*Robert V. Ulloa, Gerald D. Hartwick, Kenneth E. Thompson,*
*Priscilla U. Hartwick, and Sheila M. Manaloto*

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| CHAMORRO EQUITIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> VIVIAN McCURDY, LISA ULLOA, and FREDERICK ULLOA, <br><br> Defendants. | CIVIL CASE NO. CV0408-13 <br><br><br> **JOINDER IN OPPOSITION OF CHAMORRO EQUITIES, INC. TO MEC, LLC's MOTION FOR INJUNCTIVE RELIEF** |
| VIVIAN McCURDY, WALTER D. ULLOA, JUDITH E. OLIVER, and LISA ULLOA, <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> CHAMORRO EQUITIES, INC., ROBERT V. ULLOA, GERALD D. HARTWICK, KENNETH E. THOMPSON, PRISCILLA U. HARTWICK, SHEILA M. MANALOTO, and DOES 2-10, <br><br> Counterclaim-Defendants. | |
| MEC, LLC, <br><br> Intervenor and Counterclaim Plaintiff. | |

H:\Christine\BRM\CEI\CV0408-13\Joinder in Opp to MEC Motion to Amd.doc

ORIGINAL

## BURDEN OF PROOF - REASONABLE DOUBT

### 1 of 2

The law presumes a defendant to be innocent of crime. Thus a defendant, although accused, begins the trial with a "clean slate"- with no evidence against him. And the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the accused. So the presumption of innocence alone is sufficient to acquit a defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after a careful and impartial consideration of all the evidence in the case.

It is not required that the People prove guilt beyond all possible doubt. The test is one of reasonable doubt. Reasonable doubt is defined as follows: "It is not a mere possible doubt because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the mind of the trier of fact in that condition that he cannot say he feels an abiding conviction to a moral certainty, of the truth of the charge."

The jury will remember that a defendant is never to be convicted on mere suspicion or conjecture. A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation.

The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant; for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

*Chamorro Equities, Inc. v. Vivian McCurdy, et al.*
Civil Case No. CV0408-13
Joinder in Opposition of Chamorro Equities, Inc. to MEC, LLC's Motion for Injunctive Relief

The Counterclaim Defendants Robert V. Ulloa, Gerald D. Hartwick, Kenneth E. Thompson, Priscilla U. Hartwick, and Sheila M. Manaloto hereby join in the Opposition of Chamorro Equities, Inc. to MEC, LLC's Motion for Injunctive Relief.

DATED this 14th day of July, 2014.

**BERMAN O'CONNOR & MANN**
Attorneys for Counterclaim Defendants
*Robert V. Ulloa, Gerald D. Hartwick,*
*Kenneth E. Thompson, Priscilla U. Hartwick, and*
*Sheila M. Manaloto*

By: _____
   /BILL R. MANN

-2-

So if the jury, after careful and impartial consideration of all the evidence in the case, has a reasonable doubt that a defendant is guilty of the charge, it must acquit. In other words, if after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant not guilty.

If the jury views the evidence in the case as reasonably permitting either of two conclusions – one of innocence, the other of guilty – the jury should of course adopt the conclusion of innocence. However, if the prosecution has proven its case beyond a reasonable doubt, the jury should of course adopt the conclusion of guilty.

**CIVILLE & TANG, PLLC**
330 HERNAN CORTEZ AVENUE, SUITE 200
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868
FACSIMILE: (671) 477-2511

*Attorneys for Intervenor MEC, LLC*

IN THE SUPERIOR COURT OF GUAM
HAGATNA, GUAM

| | |
|---|---|
| CHAMORRO EQUITIES, INC., | Civil Case No. CV0408-13 |
| Plaintiff, | |
| vs. | **MEC'S REPLY TO CHAMORRO EQUITIES, INC.,'S OPPOSITION TO MEC, LLC'S MOTION FOR INJUNCTIVE RELIEF** |
| VIVIAN McCURDY, LISA ULLOA and FREDERICK ULLOA | |
| Defendants. | |
| | |
| VIVIAN MCCURDY, WALTER D. ULLOA, JUDITH E. OLIVER AND LISA ULLOA, | |
| Counterclaim Plaintiffs, | |
| vs. | |
| CHAMORRO EQUITIES, INC., ROBERT V. ULLOA, GERALD D. HARTWICK, KENNETH E. THOMPSON, PRISCILLA U. HARTWICK, SHEILA M. MANALOTO and DOES 2-10 | |
| Counterclaim Defendants. | |
| | |
| MEC, LLC | |
| Intervenor | |

**ARGUMENT IN REPLY**

Chamorro Equities, Inc. ("Chamorro Equities") is stealing, or put politely converting, MEC, LLC's ("MEC") rights and interest in the shares (the "Shares") it took in

-1-

ORIGINAL

# JURY INSTRUCTIONS

## *PEOPLE OF GUAM*

*v.*

## *KURT ANDERSON DAMIAN*

## CRIMINAL CASE NO. CF0107-14

pledge from Vivian McCurdy ("Mrs. McCurdy") and it wishes to continue to do so. Chamorro Equities is so intent on defending its conversion of MEC's rights and interest and has so little regard for the facts and law of this case that its proffered justification for the conversion to this court is worse than the original excuse provided to MEC. Originally, when Chamorro Equities refused to allow MEC to vote Mrs. McCurdy's proxy and refused to turn over any dividends, it claimed that it did not "recognize the validity" of the underlying agreement between MEC and Mrs. McCurdy. See, **Exhibit "L"** to Razzano Declaration filed June 16, 2014 (hereinafter referred to as the "Razzano Dec. #1"). In its Opposition to MEC's Motion for Injunctive Relief (the "Opposition"), Chamorro Equities seemingly abandoned the idea that the underlying agreement is not valid, admits MEC is a secured creditor, and now argues that as a secured creditor, MEC "does not automatically own the collateral when the debtor defaults." Opposition at p. 6.

The distinction between being the owner of the stock as opposed to a secured creditor does not matter in this case, since either status allows MEC to participate in the corporation. If, MEC owns the stock, it can vote and receive dividends and Chamorro Equities has violated Article 8 of the Guam Uniform Commercial Code ("UCC" or "GUCC" for the Guam specific UCC"). If MEC is "only" a secured creditor, then the assignment of dividends and voting rights allows it to vote and receive dividends and Chamorro Equities has tortiously interfered with MEC's contractual rights. Bizarrely, after arguing that MEC is "only" a secured creditor Chamorro Equities provides no justification for why it does not have to remit dividends to the secured creditor or why it refused to allow the secured creditor to exercise Mrs. McCurdy's proxy.

The Opposition asks this Court to ignore Chamorro Equities' active conversion of MEC's interest because it *suspects* that there are defect(s), not in the underlying agreement, but in the dealings between Mrs. McCurdy and MEC. This is an unsupported claim that is devoid of merit. For the reasons that follow, MEC respectfully requests that this Court issue an injunction: (1) to stop all cash distributions or dividends until this Court has determined actual ownership of the shares in Chamorro Equities, Inc.; (2) declaring any elections held by shareholders of Chamorro

# JURY INSTRUCTIONS

## I. PRELIMINARY OPENING INSTRUCTIONS

JUROR ATTENTIVENESS ................................................................................... 1A

ROLE OF THE COURT ...................................................................................... 1B

ROLE OF THE JURY .......................................................................................... 1C

THE PEOPLE AS A PARTY ............................................................................... 1D

BURDEN OF PROOF – REASONABLE DOUBT ................................................ 1E

INSTRUCTIONS TO BE CONSIDERED AS A WHOLE ....................................... 1F

ALL INSTRUCTIONS NOT NECESSARILY APPLICABLE ................................. 1G

PEOPLE HAVE BURDEN TO PROVE EACH AND EVERY
ELEMENT OF THE OFFENSE CHARGED ......................................................... 1H

CONSIDER EACH CHARGE SEPARATELY ...................................................... 1I

ACTIVITIES NOT CHARGED ............................................................................ 1J

## II. JURORS

JUROR OBLIGATION .......................................................................................... 2A

JURY NOT TO TAKE CUE FROM THE JUDGE ................................................. 2B

JUROR FORBIDDEN TO MAKE AN INDEPENDENT INVESTIGATION ........... 2C

JURY NOT TO CONSIDER PUNISHMENT ......................................................... 2D

JUROR'S USE OF NOTES ................................................................................... 2E

COMMUNICATIONS WITH THE COURT ........................................................... 2F

IMPROPER CONSIDERATIONS: RACE, RELIGION,
NATIONAL ORIGIN, SEX OR AGE .................................................................... 2G

Equities void that did not include MEC as a participant, specifically the annual shareholders meeting and Board of Directors meeting held on June 11, 2014; and (3) any other relief the Court finds equitable in its discretion.

**I.    MEC's Injunctive request involves the issues in this suit.**

Chamorro Equities objects to the Motion on the basis that MEC seeks relief not requested in its current complaint. Although a court should not issue an injunction when the injunction in question is not of the same character, or deals with a matter lying wholly outside the issues in the suit, a preliminary injunction is always appropriate when granting intermediate relief of the same character as that which may be granted finally. See, De Beers Consol. Mines v. U.S. 325 U.S. 212, 220 (1945).

This suit is based on, among other causes of action, the tort of conversion—Chamorro Equities is converting MEC's rights in the Shares. See, MEC, LLC's Answer and Counterclaims at ¶¶ 60-65. The Motion seeks to arrest the illegal behavior and asks this Court to end Chamorro Equities' practice of preferring some shareholders to others. This is the gravamen of MEC's original counterclaim in intervention and the gravamen of the proposed amendment as well. See generally, Motion to Amend, filed June 20, 2014. MEC filed the instant Motion, and the Motion to Amend, in direct response to the actions taken by Chamorro Equities on June 11, 2014. The Court should not deny the Motion on the *de minims* procedural distinctions Chamorro Equities relies upon.

**II.    The denial of MEC's participation in Chamorro Equities is an irreparable injury.**

Chamorro Equities refuses to: (1) allow MEC to participate in corporate governance, see, **Exhibit "L"** to Razzano Dec. #1; (2) recognize the valid Pledge from Mrs. McCurdy to MEC, **Exhibit "F,"** to Razzano Dec. #1; and (3) recognize the valid proxy agreement contained therein, **Exhibit "F,"** sections 5 & 7(c), to Razzano Dec #1. This refusal to allow MEC to participate in Chamorro Equities, in any manner, particularly participation via voting its shares, amounts to an irreparable injury that can only be addressed through equity. Mack, 2013 Guam 13, ¶ 44. Chamorro Equities' response to this argument is a *non sequitur*.

Instead of addressing the facts in the Motion of the continuing injury to MEC, Chamorro

## III. <u>TREATMENT OF EVIDENCE</u>

CONDUCT OF COUNSEL ........................................................................................3A

PRODUCTION OF ALL AVAILABLE EVIDENCE NOT REQUIRED ...................3B

INDICTMENT IS NOT EVIDENCE.....................................................................3C

RIGHT TO SEE EXHIBITS AND HEAR TESTIMONY ........................................3D

DIRECT AND CIRCUMSTANTIAL EVIDENCE..................................................3E

"INFERENCE" DEFINED (PRESUMPTIONS) ....................................................3F

~~DEMONSTRATIVE EVIDENCE~~ ....................................................................~~3G~~

PROOF NEED NOT SHOW EXACT TIME OF CRIME........................................3H

WHAT IS NOT EVIDENCE.................................................................................3I

*Mere Presence Insufficient*
~~STIPULATIONS~~ ...............................................................................................3J

EVIDENCE OF OTHER CRIMES .......................................................................3K

## IV. <u>TREATMENT OF WITNESS</u>

CREDIBILITY OF WITNESS.................................................................................4A

CREDIBILITY OF WITNESS – DISCREPANCIES ..............................................4B

BIAS OR HOSTILITY..........................................................................................4C

LAW ENFORCEMENT WITNESSES...................................................................4D

SUFFICIENCY OF TESTIMONY OF ONE WITNESS..........................................4E

WEIGHING CONFLICTING TESTIMONY ...........................................................4F

DISCREPANCIES IN TESTIMONY .....................................................................4G

DEFENDANT'S DECISION NOT TO TESTIFY...................................................4H

STATEMENTS MADE BY DEFENDANT .............................................................4I

Equities fixates on the charge levied against it that Chamorro Equities is wrongfully withholding dividend payments. It then goes on to argue that the withheld dividend payments are monetarily compensable and, therefore, injunctive relief is improper. While *some* of the rights Chamorro Equities interferes with take the form of stolen dividend payments, courts can grant injunctive relief to stop such oppressive acts. See, Matter of Kemp & Beatley, 64 N.Y.2d 63, 67 (N.Y. 1984) ("A shareholder who reasonably expected that ownership in the corporation would entitle him or her to a job, a share of corporate earnings, a place in corporate management, or some other form of security, would be oppressed in a very real sense when others in the corporation seek to defeat those expectations and there exists no effective means of salvaging the investment.") Additionally, Chamorro Equities also is oppressive towards MEC's voting rights, and Chamorro Equities barely acknowledges this fact.[2] Chamorro Equities ignores the deprivation of voting rights because it cannot counter that argument—the law holds that freezing out a shareholder requires injunctive relief. Mack, 2013 Guam 13, ¶ 44.

Additionally, Chamorro Equities is not only freezing MEC out of a voice in corporate governance, it is using MEC's property—the dividend payments—to litigate against MEC. Thus, Chamorro Equities is allowed to finance a lawsuit with MEC's property. This allows litigation without inconveniencing the shareholders that support the current leadership and serves as a warning to any other shareholder that might not agree with the current policies. Placing an injunction on Chamorro Equities forbidding it from preferring some of its shareholders over others will not only be fair and equitable, but will allow other minority shareholders who fear the current leadership, or the current leadership's attorneys, a real voice in company governance. At the very least, Chamorro Equities should be forced to pay the disputed dividend into the court's registry.

Chamorro Equities has no real response to MEC's arguments on irreparable injury because the law and facts are squarely on MEC's side. The Supreme Court of Guam allows for

---

[2] Chamorro Equities claims that MEC doesn't "own" the shares and even if it did, MEC doesn't have the votes to change any corporate outcome. Opposition at Note 4. Put another way, Chamorro Equities argues that minority shareholder rights don't exist. This is a risible argument.

-4-

# V. <u>DEFINITIONS</u>

CONDUCT TO INCLUDE VOLUNTARY ACT OR OMISSION ............................................5A

"VOLUNTARY ACT" DEFINED.........................................................................................5B

KNOWLEDGE AND INTENT...............................................................................................5C

CULPABILITY ........................................................................................................................5D

"INTENTIONALLY" DEFINED ...........................................................................................5E

"KNOWINGLY" DEFINED....................................................................................................5F

"RECKLESSLY" DEFINED ...................................................................................................5G

CULPABILITY APPLIED TO ELEMENTS OF OFFENSE.....................................................5H

"ASSAULT" DEFINED...........................................................................................................5I

"BODILY INJURY" DEFINED ..............................................................................................5J

"THEFT BY RECEIVING STOLEN PROPERTY" DEFINED .................................................5K

"MOVABLE PROPERTY" DEFINED ...................................................................................5L

"PROPERTY OF ANOTHER" DEFINED ...............................................................................5M

"FELONY VEHICLE IDENTIFICATION" DEFINED.............................................................5N

"ELUDING A POLICE OFFICER" DEFINED.........................................................................5O

"ELUDES" DEFINED .............................................................................................................5P

"TOTALITY OF THE CIRCUMSTANCES" DESCRIBED .....................................................5Q

injunctive relief when a party is frozen out of corporate governance and other courts have recognized the need to use equity to stop oppressive behavior regarding dividends in a closely-held corporation. The damage is irreparable, and injunctive relief is proper.

**III.    MEC will succeed on the merits as Chamorro Equities' actions violate Guam law.**

Chamorro Equities argues that MEC did not automatically become the owner of the Shares when Mrs. McCurdy defaulted. Opposition at p. 6. But, in making this argument Chamorro Equities admits that MEC is a secured party. Id. It then uses MEC's secured creditor status to argue that under Article 9 of the GUCC the *debtor* has the ability to redeem its collateral. Id. Chamorro Equities then argues that MEC failed to provide any evidence it fully complied with Article 9 of the GUCC and thus it is not entitled to any relief because the *debtor* may have rights. Chamorro Equities isn't a secured party, isn't a debtor, and isn't involved in the transaction between Mrs. McCurdy and MEC. As such, Chamorro Equities has no standing to raise a debtor's rights under Article 9, and even if it did, Chamorro Equities failed to articulate how MEC's status as a secured creditor is somehow inferior to Chamorro Equities status as a nonjudgment and unsecured creditor.

Assuming, *arguendo,* that Chamorro Equities is correct and that "all" MEC is, is a secured party; Chamorro Equities provides no reason why it should not have to honor the pledge agreement.[3] MEC is a pledgee—nobody disputes this fact. At common law, a pledgee's failure to have the shares registered in its own name was not viewed as evidence of a waiver of its right to dividends or voting rights. See, e.g., Busch v. Commissioner, 148 F.2d 799, 800 (8th Cir. 1945); In re Burner, 109 B.R. 216, 223 (Bankr. W.D. Tex. 1989); Gemmell v. Davis, 23 A. 1032, 1034 (Md. 1892). Thus, "where stock of an incorporated company is pledged by the owner as collateral security for a debt, the pledgee has a right, and is in duty bound, to collect the dividends on the stock, and apply them to the debt for which the stock is pledged, or to hold them as trustee for the pledgor. The dividends follow the stock into the hands of the person who

---

[3] In yet another demonstration of bad faith, Chamorro Equities President confirmed that had MEC only asked for the dividends as an assignment and not as an ownership right, Chamorro Equities would have paid MEC. **Exhibit "A-2"** at p. 93, lns. 5-20. This is a shockingly glib answer considering the theft that is ongoing and the arguments put forth in the Opposition.

## VI. <u>ELEMENTS OF OFFENSE</u>

THEFT BY RECEVING STOLEN PROPERTY (as a 2nd Degree Felony) ............................. 6A

FELONY VEHICLE IDENTIFICATION (as a 3rd Degree Felony) ............................. 6B

ELUDING A POLICE OFFICER (as a Misdemeanor) ............................. 6C

ASSAULT (as a Misdemeanor) ............................. 6D

## VII. <u>CLOSING INSTRUCTIONS</u>

VERDICT AS TO ACCUSED ONLY ............................. 7A

VERDICT – UNANIMOUS – DUTY TO DELIBERATE ............................. 7B

GENERAL VERDICT AS TO OFFENSE CHARGED ............................. 7C

ADMONITION AGAINST DISCLOSURE OF JURY BALLOTING ............................. 7D

ELECTION OF FOREPERSON ............................. 7E

is the legal holder of the stock." Guarantee Co. of North America v. East Rome Town Co., 96 Ga. 511, 513 (Ga. 1895). In fact, if "the corporation, with notice of the fact that the pledge has been made, pays the dividends to the pledgor, it is liable to the pledgee for such dividends; and this is so although the transfer of the stock has not been entered on the books of the corporation." Id. (citations omitted). Here, the corporation had notice of the pledge and still refused to pay either the pledgee or the pledgor.

The UCC did not change these common law rules. For example, although section 8-207(1) acknowledges the issuer's right to treat the registered owner as the person exclusively entitled to exercise the rights and powers of an owner, the comments state that this section is not intended to determine "who is finally entitled to exercise voting and other rights or to receive payments and distributions." U.C.C § 8-207, official comment 3. Additionally, the official comment notes that the parties are free to make their own arrangements, "which will be definitive as between them." Id. Given the Code's approach to the parties' agreement, it makes no sense to argue, as Chamorro Equities has, that there is a distinction between pledgee and owner. In fact, such an argument is strains credulity, and any such attempt makes a distinction without a difference.

This is because once Mrs. McCurdy defaulted on her obligations to MEC, she agreed to assign her rights and interest in the Shares to MEC. Part of those rights and interests were her voting rights and her right to receive dividends. **Exhibit "F"** to Razzano Dec. #1. Thus, Chamorro Equities' entire argument that MEC isn't the actual owner is meaningless. Even assuming that MEC isn't the owner of the Shares there is no argument that Mrs. McCurdy didn't assign her voting rights or her dividend rights to MEC. She did. Id., sections 5 & 7(c). Thus, it does no good to claim MEC isn't the actual owner of the Shares if it has the right to vote and to receive Dividends—as it does. Finally, Chamorro Equities has no standing to raise Mrs. McCurdy's Article 9 rights in the first place, if any.

Chamorro Equities raises Article 9 of the UCC to highlight a list of statutory rights that, theoretically, Mrs. McCurdy could have raised. This is odd because Chamorro Equities has no rights under Article 9, as it is not a lender, borrower, a secured party, or a successor in interest. In

-6-

# JURY INSTRUCTION NO. 1A

## JUROR ATTENTIVENESS

Ladies and gentlemen, you are about to enter your final duty, which is to decide the fact issues in this case.

Before you do that, I will instruct you on the law. You must pay close attention to me now. I will go as slowly as I can and be as clear as possible.

I told you at the very start of the trial that your principal function during the taking of testimony would be to listen carefully and observe each witness who testified. It has been obvious to me and to counsel that you have faithfully discharged this duty. Your interest never flagged, and it is evident that you followed the testimony with close attention.

I ask you to give me that same careful attention, as I instruct you on the law.

fact, it is a stranger to the transaction between Mrs. McCurdy and MEC, and instead of citing to provisions of Article 9 giving it rights, Chamorro Equities argues that Mrs. McCurdy as the debtor, has rights. Odder still is the fact that Chamorro Equities doesn't even contend that the shares do not belong to MEC. Chamorro Equities simply argues that MEC hasn't proven the shares belong to it. Perhaps this is because Mr. McCurdy, at the shareholder meeting, chastised Chamorro Equities for its treatment of MEC and informed the agents of Chamorro Equities that "a deal was a deal." Razzano Declaration #2 at ¶¶ 5-6. Put another way, Chamorro Equities believes that it doesn't have to comply with its duties under the Article 8 or recognize MEC's status as pledgee if it *suspects* that MEC owed a duty to Mrs. McCurdy and failed to live up to that duty. This is simply bad faith.

The reason Chamorro Equities spends its entire brief arguing for Mrs. McCurdy's rights under Article 9, if any, and ignoring MEC's rights, or Chamorro Equities' own obligations, under Article 8 is that Article 8 specifically regulates the relationship between MEC and Chamorro Equities. Importantly, Chamorro Equities has ignored its duties under the law. As such, any discussion of Article 8 leads to the inexorable conclusion that Chamorro Equities is willfully violating the law and knowingly converting property that belongs to MEC.

For example, upon the demand that Chamorro Equities register the stock in the name of MEC, Chamorro Equities had a right to: (1) inspect the security to see that it is indorsed by the appropriate person, 13 G.C.A. 8401(1)(a); (2) reasonable assurances that the endorsements are genuine and effective, 13 G.C.A. 8401(1)(b) and (3) a limited duty of inquiry if it is presented with a written notification of an adverse claim to the shares, 13 G.C.A 8403(1)(a). Chamorro Equities did not seek to have any of this information provided to it, rather it asked to see the underlying loan documents and pledge agreements. **Exhibit "M"** to Razzano Dec. #1. MEC offered Chamorro Equities any other information it wanted, **Exhibit "N"** to Razzano Dec. #1, but instead of asking for additional information, registering the transfer of the Shares, or lodging a permissible objection as identified by the Code, Chamorro Equities took the position that the transfer Vivian McCurdy's shares happened, that the transfer was not valid, and that it would like to exercise its right of "first refusal" against MEC found in its Articles of Incorporation.

-7-

# JURY INSTRUCTION NO. 1B

## ROLE OF THE COURT

You have now heard all of the evidence in the case and you have heard the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means you must decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case.

On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instructions as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be – or ought to be – it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

**Exhibit "J"** to Razzano Dec. #1. Only now, when confronted with the stark illegality of its actions does Chamorro Equities attempt a fig leaf justification by alleging that Mrs. McCurdy has rights and that those rights preclude relief for MEC. Chamorro Equities presents an untenable position and MEC is entitled to relief and will prevail on its claims.

**IV.     Because Chamorro Equities had notice of the transaction and ignored the notice, it lost any right of first refusal it may have had.**

Chamorro Equities claims that: (1) a pledge of stock is not a transfer that triggers a right of first refusal; and (2) that it first became aware of MEC's claims to the Shares in November of 2013. Both of these arguments are meritless.

Chamorro Equities cites Guice v. Sentinel Tech., 689 N.E.2d 355 (Ill. App. 1997), for the proposition that a right of first refusal isn't triggered by a pledge of stock. But, Guice doesn't stand for the general proposition that a stock pledge does not trigger a right of first refusal. Rather, it stands for the proposition that the specific restriction at issue in Guice did not apply to pledges. This is clear in that the court held that: "given the clear language and intent of the stock restriction agreement, [the party] was not required to obtain Sentinel's prior written consent to his stock pledge agreement with Guice." Id. In other words, the holding in Guice is specific to the restriction in that case. Moreover, it is completely unclear why Chamorro Equities would cite such a case when the president of Chamorro Equities believes that a stock pledge agreement triggers the right of first refusal. See, Transcript of Deposition of Robert Ulloa attached to Razzano Dec. # 2 as **Exhibit "A-2"** at p. 118, lns. 12-16.

Shareholders of Chamorro Equities are forbidden from "transfer[ing], alienat[ing], or in any way dispos[ing] of any share of stock of the corporation unless such share shall first have been offered for sale to the corporation." **Exhibit "O"** to Razzano Dec. #1. This is an incredibly broad restriction and different in kind from the one cited in Guice. But, even if the restriction in Guice is identical to the one at bar, and it isn't, the President of Chamorro Equities believes that a pledge of stock triggers the right of first refusal.

In his deposition, President Ulloa, when asked if Mrs. McCurdy had to request

-8-

## ROLE OF THE JURY

### 1 of 2

Your final role is to pass upon and decide the fact issues that are in the case. You, the members of the jury, are the sole and exclusive judges of the facts. You pass upon the weight of the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony, and you draw whatever reasonable inference you decide to draw from the facts as you have determined them.

I shall later discuss with you how to pass upon the credibility – or believability – of the witnesses.

In determining the facts, you must rely upon your recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. In this connection, you should bear in mind that a question put to a witness is never evidence. It is only the answer which is evidence. Nothing I may have said during the trial or may say during these instructions with respect to a factual matter is to be taken in substitution for your own independent recollection. What I say is not evidence.

The evidence before you consists of the answers given by witnesses – the testimony they gave, as you recall it – and the exhibits that were received in evidence.

A question by itself is not evidence; consider it only to the extent adopted by the answer. But you may not consider any answer that I directed you to disregard or that I directed struck from the record. Do not consider such answers.

permission from the board to pledge her stock, stated: "[a]gain, I'm not an attorney, but my understanding is yes." **Exhibit "A-2"** at p. 118, lns. 12-16 to Razzano Dec. #2. In fact, President Ulloa specifically invoked section 5.1 of the Articles of Incorporation (the alienation restriction) and stated that: "it would seem that [the Chamorro Equities Board] would need to know that the stock is being pledged and can possibly be moved outside of the family corporation." Id. at pp. 118-9, lns. 25, 1-3. In other words, the President of Chamorro Equities believes that a pledge of stock triggers board notification and the company's right of first refusal. This is fatal to Chamorro Equities' case as it had notice of the transaction almost two years ago, **Exhibits "B" & "C"** to Razzano Dec. #1, and when an owner makes a reasonable disclosure of the terms of a proposed sale, the holder of the right of first refusal has a duty to undertake a reasonable investigation of any terms unclear to him. Koch Indus., Inc. v. Sun Co., Inc., 918 F.2d 1203, 1212 (5th Cir. 1990).

Chamorro Equities continues to argue that it did not learn of the sale or transfer of the Shares until November 2013. This argument is either willfully ignorant or deeply dishonest. As indicated in the Motion, Chamorro Equities had notice of the transaction almost two years ago. Id. Moreover, the undersigned informed Chamorro Equities, through its attorneys Bill Mann and Dan Berman, that MEC owned the shares. **Exhibit "S"** to Razzano Dec. #1. Given these facts it is unclear why Chamorro Equities insists that it only found out about MEC's claims in November 2013. The record is clear: Chamorro Equities, or its agents with apparent authority, had knowledge of the stock pledge agreement years before November 2013. Any first refusal right Chamorro Equities had expired long ago.

## V.     MEC provided sufficient facts to award injunctive relief.

Chamorro Equities is clearly unhappy that it has neither the facts nor the law to support or excuse its stockholder oppression. As demonstrated, Chamorro Equities refuses to discuss its rights or duties under Article 8, preferring instead to discuss another party's rights under Article 9. All of this is in an effort to deflect attention from the fact that if Chamorro Equities wanted to restrict its shares to outsiders, it need only have placed or referenced the Restriction on the Shares. It failed to do so. Now, after it has failed in its legal obligations, it seeks to avoid

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views or what your decision should be as to whether or not the guilt of the defendant has been proven beyond a reasonable doubt.

As to the facts, ladies and gentlemen, you are the exclusive judges. You are to perform the duty of finding the facts without prejudice as to any party.

responsibility for its actions. Part of that avoidance is to complain that it doesn't have the facts to combat the Motion. This is spurious. Attorneys for Chamorro Equities are charged with investigating their client's claims *before* they sign pleadings.

Additionally, Chamorro Equities misapprehends the procedural posture of this case. The Motion is *not* seeking summary judgment or adjudication on the merits. Rather, the Motion seeks injunctive relief to stop Chamorro Equities from continuing its minority shareholder oppression. As such, Chamorro Equities' reliance on Guam Sanko Transpiration, Inc., v. Pacific Modair Corp., 2012 Guam 2, is inapposite. Discovery is not closed, Chamorro Equities can conduct discovery and attempt to get a different answer then the sworn statement of Melissa Torres. In fact, it received discovery from MEC member Edwin F. Torres already. See MEC's Answers to Interrogatories, served on July 3, 2014, attached as **Exhibit "B-2"** to Razzano Dec. #2. The record before the court indicates that MEC was not aware of the restriction, and that Chamorro Equities is unable to combat this evidence at all leaves the court with good cause to grant Injunctive relief.

### CONCLUSION

Based on the Motion, the Opposition, and this reply, this Court should not delay in issuing an injunction. Alternatively, if the Court believes further evidence is required than an evidentiary hearing should be ordered without further delay.

*Respectfully submitted* at Hagåtña, Guam, on July 28, 2014.

CIVILLE & TANG, PLLC

By:_____
     JOSHUA D. WALSH

-10-

## THE PEOPLE AS A PARTY

You are to perform the duty of finding the facts without bias or prejudice as to any party. You are to perform your final duty in an attitude of complete fairness and impartiality.

The case is important to the People of Guam, for the enforcement of criminal laws is a matter of prime concern to the community. Equally, it is important to the defendant who is charged with a serious crime.

The fact that the prosecution is brought in the name of the People of Guam entitles them to no greater consideration than that accorded to any other party to a litigation. By the same token, it is entitled to no less consideration. All parties, whether the People or individuals, stand as equals at the bar of justice.